Bishop JACKSON, Sr., et al., Plaintiffs,

v.

Terry MARSH, Defendant.

Civ. A. No. 81–JM–1367.

United States District Court, D. Colorado.

Dec. 7, 1982.

Clifford Beem, Denver, Colo., for plaintiffs.

Louis B. Bruno, Lakewood, Colo., Charles H. Richardson, Asst. City Atty., City of Aurora, Aurora, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

JOHN P. MOORE, District Judge.

THIS MATTER arises upon the motion of the Defendant, Terry Marsh, for summary judgment. The underlying complaint has been brought under 42 U.S.C. §§ 1983 and 1988. Jurisdiction is based upon 28 U.S.C. §§ 1331, 1332, and 1343. The Plaintiffs are the surviving parents of Bishop Jackson, Jr., who was allegedly shot and killed by the Defendant, who, at the time of the alleged event, was a police officer of the City of Aurora, Colorado. The Defendant has moved for judgment dismissing the first and second claims for relief in the second amended complaint.

Three questions were raised in the motion: (1) Is there a constitutionally protected right of parents to the companionship, care, custody, management, aid, society, support, and protection of their children? (2) Do §§ 13–20–101, C.R.S.1973, the state survival statute, and 13–21–201, C.R.S.1973, the wrongful death statute, limit the Plaintiffs' recovery? (3) Does this action present a pendent claim for wrongful death recovery which should be dismissed?

I

*The Alleged Constitutionally Protected Parental Right*

■ Defendant takes the position that there is no constitutionally protected parental right which can be invoked under § 1983. He argues that if there were such a right, it would be a liberty right which does not depend upon any statute for its existence. As a corollary, he argues the Colorado wrongful death statute is a legal remedy which is a legislative creation without constitutional underpinnings. Hence, Defendant concludes, the state wrongful death statute cannot provide a basis for a § 1983 action.

The seminal inquiry is whether there is indeed a constitutionally protected parental right to the continued life of an offspring. Plaintiffs take the position that there is such a right and that it is fundamental, citing *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Espinoza v. O'Dell,* 633 P.2d 455 (Colo.1981); *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); and others. Plaintiffs argue there has always been a recognition of an inherent right of a parent to protect the integrity and constancy of the family relationship, and this recognition makes clear

the right of a parent to the continuation of the family unit.[1]

After consideration of the arguments and the cases upon which they are based, it seems clear to me Defendant's assertions are correct. This conclusion has not been lightly reached, however, as certain pronouncements of the Supreme Court lend facial credence to the Plaintiffs' arguments. Yet, even though the Court has never specifically articulated a right such as Plaintiffs assert,[2] there is a readily perceived distinction between the cases upon which the assertion is made to make those cases inapposite here.

If we begin with the premise that the asserted right is really a liberty right lurking in the penumbras of the Bill of Rights applicable through the fourteenth amendment, we can find the hook upon which Plaintiffs arrest their case, for within those shadows is a number of cases in which various "family" rights have been addressed. Indeed, as Justice White said in *Stanley v. Illinois, supra,* 405 U.S. at 651, 92 S.Ct. at 1212, "[t]he Court has frequently emphasized the rights of the family." Closer scrutiny, however, discloses the parameters of those rights are murky.

Indeed, while the Court spoke of the right "to establish a home and bring up children," *Meyer v. Nebraska, supra,* 262 U.S. at 399, 43 S.Ct. at 626, that right was discussed only in the context of the state's action which invaded a child's right to "acquire useful knowledge," *id.* In the same vein, although the court spoke of a mother's "right to care, custody, management and companionship of her minor children," *May v. Anderson,* 345 U.S. 528, 533, 73 S.Ct. 840, 843, 97 L.Ed. 1221 (1952), that right was posited in the context of the propriety of a state court's affecting that right without

personal jurisdiction over the mother. In both these cases, the ultimate judgment of the court was founded upon a basis other than the "family right." Indeed, the same situation prevails in *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); *Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1943); and *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). In each of these cases, reference was made to an underlying "family right"[3] or to the sanctity of the relationship of marriage, but only in dictum. It is only in *Prince* where the "family right" assumed a greater dignity, but even then it was asserted only to "buttress" the controlling argument urged in the case.[4]

In apparent recognition of this problem, Plaintiffs have heavily relied upon *Stanley v. Illinois, supra,* and *Espinoza v. O'Dell, supra.* Yet, in my opinion, neither of these cases provide Plaintiffs with any support. Clearly, *Stanley* stands only for the proposition that the due process and equal protection provisions of the fourteenth amendment prohibit a state from treating an unmarried father any different from any other biological parent when the state seeks to deprive the parent of custody. Although it is true that in *Stanley* the court once again in eloquence espoused the importance of the family relationship, its judgment was founded not upon the sanctity of the family but upon the disparate effect of the state law which, by definition, made an unwed father unsuited to have custody of his children upon the death of their mother. To compound Plaintiffs' problem, I believe, with due respect, the Colorado Supreme Court in *Espinoza, supra,* has misinterpreted *Stanley.*

---

1. It would seem this position concedes the right with which we are here involved, if there is a right, is one which arises out of the Constitution and not a statute.

2. *Jones v. Hildebrant,* 432 U.S. 183, 189, 97 S.Ct. 2283, 2287, 53 L.Ed.2d 209, dissent of White, J.

3. "Marriage and procreation are fundamental to the very existence and survival of the race." *Skinner, supra,* 316 U.S. at 541, 62 S.Ct. at 1113. A parent has the right "to bring up the child in the way he should go . . . ." *Prince, supra,* 321 U.S. at 164, 64 S.Ct. at 441. "Custody, care and nurture of the child reside first in the parents . . . ." *Ibid.* at 166, 64 S.Ct. at 442.

4. 321 U.S. at 164, 64 S.Ct. at 441.

It appears as though the Colorado court has concluded *Stanley* establishes a protected parental right to the continued life of the child. In my judgment, such a conclusion can only be reached by a proverbial "quantum leap" launched from the forceful dictum of Justice White. With the constitutional basis for the *Stanley* judgment being the due process and equal protections rights of the father *as an individual,* there is no way in which reference by Justice White to the family could be anything more than dictum.[5] With that, I must conclude *Espinoza* is not authority which supports the Plaintiffs.

Examination of the position taken here by Plaintiffs discloses they have failed to recognize that what has been asserted by the United States Supreme Court in its many references to the family unit is really an intent to perpetuate and protect the interfamilial relations of existing families. *See Quilloin v. Walcott,* 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1977). Moreover, none of the courts which have considered the question directly have concluded that an individual has a protected liberty right to the continued life of a family member.[6]

By contrast, it has been the continuous effort of the Supreme Court to preserve the family unit by protecting it from *governmental* invasions which, by their very nature, either inhibit the creation of the family or abrogate to the government those decisions which must be reserved to family members. *See* L. Tribe, *American Constitutional Law,* 985–988 (1978). In none of the cases relied upon by Plaintiffs has the Court found a family member has an individual right arising from the family relationship which can be asserted against another individual, and that is exactly what distinguishes those cases from this.

The Court has always sought to eliminate governmental action which is directed against the family in a manner inimicable to the Constitution; however, the focus of those cases was upon governmental, not individual, involvement with the sanctity of the family.

This brings me to consideration of *Mattis v. Schnarr,* 502 F.2d 588 (8th Cir.1974). Plaintiffs rely heavily upon *Mattis,* for it finds that the family relationship is so fundamental to our civilization that a father has a constitutionally protected right to raise his son. Upon that conclusion, the court held that when a police officer killed the son, the practical effect was to deny the father of his parental right. (Whether the same result would have been reached if the son were not a minor and not living with his parents, as in this case, is problematic.) Yet, as I believe the court misconceived the nature of the parental right, I am not persuaded to follow *Mattis.*

In my judgment, the parental or family right with which we deal is simply the right to be free from pervasive, broadly-focused governmental activity directed at the family units in the community as a whole or applicable to all families within the purview of the governmental entity. Conversely, the Supreme Court has never addressed, nor has it created, a right of a constitutional magnitude which protects individuals from particular acts of governmental agents focusing upon specific family members and potentially affecting the continuity of the intrafamily relationship.

Individuals who have been subjected to those acts are not without redress; however, as I see their right, it is not one protected by the United States Constitution in a manner which would make it cognizable under § 1983. In short, any right arising out of facts such as those before me in this case must be pursued in state court.

II

*The Question of Limitation of Damages*

█ In their capacity as Personal Representatives of the estate of their deceased

---

5. One could assume that had the Illinois statute treated the unwed father the same as the divorced father, there would have been no constitutional question present in *Stanley.*

6. *Evain v. Conlisk,* 364 F.Supp. 1188 (N.D.Ill.E.D.1973), *aff'd,* 498 F.2d 1403 (7th Cir.1974); *Sanchez v. Marquez,* 457 F.Supp. 359 (D.Colo. 1978); *Sager v. City of Woodland Park,* 543 F.Supp. 282 (D.Colo.1982).

son, the Plaintiffs are seeking damages under § 1983 for the alleged wrongs visited upon the deceased. The Defendant maintains this claim must be limited by the net pecuniary loss limitation set forth in the state survival statute, § 13–20–101, C.R.S. 1973, and by the $45,000.00 limitation of the wrongful death statute, § 13–21–201, C.R.S.1973. Accordingly, the Defendant has moved to strike all prayers for punitive damages and for compensatory damages in excess of those limitations. I conclude the motion is only partially valid.

It must be remembered that the action brought by the Plaintiffs in their representative capacity is not one which arises out of the common law tort, nor is it a tort "based on personal injury" within the meaning of § 13–20–101(1), C.R.S.1973. *Sanchez v. Marquez,* 457 F.Supp. 359 (D.Colo.1978). Indeed, the claim is one of wholly federal origin whose "analytical proximity" is the so-called "constitutional tort." *Id.* at 362. For this reason, there is simply no foundation for the application of the state damage limitations. For a more thorough discussion, *see Sager v. City of Woodland Park,* 543 F.Supp. 282 (D.Colo.1982).

At the same time, because of my conclusion the Plaintiffs have no individual § 1983 remedy, their claim which arises out of the death of their son, if cognizable at all, must be a pendent claim. Thus, it only follows that if this claim is to be maintained here, the state limitations must apply. The damage claim based upon the parents' rights under § 13–21–201 shall be limited to the amount set by that statute.

### III

#### *Dismissal of the Plaintiffs' "Wrongful Death Action"*

■ Having arrived at this juncture, one should not be dismayed by the application of consistency (Emerson to the contrary notwithstanding).[7] In my judgment, the claim of the Plaintiffs in their individual capacities is so closely allied to the matters over which jurisdiction has attached that

pendent jurisdiction should be exercised. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); and *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577. Accordingly, Defendant's motion to dismiss this claim shall be denied.

Upon the basis of the conclusions herein expressed, it is ORDERED:

1. Defendant's motions for summary judgment and dismissal are denied.

2. Defendant's motion to strike all prayers for relief in excess of § 13–20–101, C.R.S.1973 is denied.

3. Defendant's motion to strike all prayers for relief in excess of § 13–21–201, C.R.S.1973 is granted.

---

7. "A foolish consistency is the hobgoblin of       small minds."