**Evelyn R. MYRES, individually and as Personal Representative of the Estate of Earnest J. Myres, deceased, the Estate of Earnest J. Myres, and Louis L. Myres**

v.

**Donald E. RASK, Joe Black, Thomas Coogan, Chief of Police of the City and County of Denver, Federico Pena, Mayor of the City and County of Denver, and City and County of Denver.**

Civ. A. No. 83–C–226.

United States District Court,
D. Colorado.

Jan. 21, 1985.

Jerry L. Stevens, John Mosby, Gabrielle Martin, Denver, Colo., for plaintiffs.

Theodore S. Halaby, Leslie L. Schluter, Denver, Colo., Louis Bruno, Bruno, Bruno & Colin, Lakewood, Colo., for defendants.

## MEMORANDUM OPINION
## AND ORDER

CARRIGAN, District Judge.

Defendants Donald Rask, *et al.*, have filed a motion to dismiss and strike arguing that (1) the plaintiffs cannot assert civil rights claims based on the death of their son, Earnest J. Myres, and (2) Colorado's survival statute limits the damages that the plaintiff Evelyn R. Myres, acting as the personal representative of Earnest J. Myres' estate, can recover. The plaintiffs have responded. The parties have briefed the issues thoroughly and oral argument would not assist in resolving them. Jurisdiction is based on 28 U.S.C. § 1343 (1982).

On July 7, 1981, Earnest J. Myres, then 18 years old, was killed during a struggle with Denver police officers Donald Rask and Joe Black. Plaintiffs are Earnest's parents. Under 42 U.S.C. § 1983, they

have asserted claims based on alleged violations of their son's constitutional rights as well as their own. Evelyn R. Myres sued as the personal representative of her son's estate.

The motion to dismiss and strike raises two issues: (1) Do parents enjoy a constitutionally protected right to the companionship and support of their children? (2) Does Colorado's survival statute, Colo.Rev. Stat. § 13–20–101(1) (1973), limit the recovery of Evelyn Myres acting in her representative capacity?

 Defendants contend that Earnest's parents cannot assert the constitutional rights of their deceased son. It is well established that under § 1983 a plaintiff may not assert the constitutional rights of another. *White v. Talboys*, 573 F.Supp. 49, 51 (D.Colo.1983); *Evain v. Conlisk*, 364 F.Supp. 1188 (N.D.Ill.1973). Plaintiffs cannot, therefore, assert the civil rights of their deceased son.

Courts have disagreed on the issue of whether parents have a constitutional right to the companionship and support of their children. Although decisions from this district have held that no such right exists,[1] Tenth Circuit opinions have suggested that the constitution protects an individual's right to the continued life of his or her family. In *Rosa v. Cantrell*, 705 F.2d 1208, 1222 (10th Cir.1982), where the wife of a homicide victim brought a § 1983 action, the court stated, "The cases hold that the decedent's heirs are allowed to file a wrongful death action under § 1983 to recover for damages suffered by the heirs as a result of the death." (citing many cases) Thus, the Tenth Circuit has recognized an independent, constitutional claim for relief in the heirs of one who dies as a result of actions performed under color of state law.

Concurring in *Wise v. Bravo*, 666 F.2d 1328 (10th Cir.1981), Circuit Judge Seymour explained:

"The right to a relationship with one's child is not created either by the constitu-

tion or by state statute. I believe it is one of those fundamental, inherent rights of every individual that predates both the federal Constitution and the state laws. Like the right to marry and have children and the right to live where one wants and pursue a livelihood by any lawful means, this right constitutes a 'liberty' interest. As such it is protected by the due process clause of the Constitution. *See generally* Annot., 'Supreme Court's Views as to Concept of 'Liberty' Under Due Process Clauses of Fifth and Fourteenth Amendments,' 47 L.Ed.2d 975 (1977).

The Ninth Amendment acknowledged the prior existence of fundamental rights when it said: 'The enumeration in the Constitution of certain rights, shall not be construed to deny or disparage others retained by the people.' U.S. Const. amend. IX. In a long line of decisions, the Supreme Court has recognized that matters involving marriage, procreation, and the parent-child relationship are among those fundamental 'liberty' interests protected by the Constitution."

The United States Supreme Court has consistently recognized that family rights are constitutionally protected. In *Harris v. McRae*, 448 U.S. 297, 312, 100 S.Ct. 2671, 2685, 65 L.Ed.2d 784 (1980) the Court described its reasoning in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973):

"The constitutional underpinning of *Wade* was a recognition that the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment includes not only the freedoms explicitly mentioned in the Bill of Rights, but also a freedom of personal choice in matters of marriage and family life."

The Supreme Court held in *Skinner v. Oklahoma*, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942), that the Constitution protects the fundamental right

---

1. *White v. Talboys, supra,* (Judge Kane); *Jackson v. Marsh,* 551 F.Supp. 1091, 1093 (D.Colo. 1982) (Judge Moore); *Layton v. Carroll,* No.

83–F–833 (D.Colo. Oct. 27, 1983) (Judge Finesilver).

to procreate. In striking down state legislation that had authorized sterilization of habitual criminals, the Court stated, "We are dealing here with legislation which involves one of the basic rights of man. Marriage and procreation are fundamental to the very existence and survival of the race."

Similarly, in *Loving v. Virginia*, 388 U.S. 1, 12, 87 S.Ct. 1817, 1824, 18 L.Ed.2d 1010 (1967), the Court, in holding that a Virginia statute that outlawed interracial marriage denied the Lovings' liberty protected by the due process clause, declared: "The freedom to marry has long been recognized as one of the vital personal rights essential to the ordered pursuit of happiness by free men." [2]

In addition, parents have a constitutionally protected right "to direct the upbringing and education of children under their control." *Pierce v. Society of Sisters*, 268 U.S. 510, 534–35, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925). *See also Wisconsin v. Yoder*, 406 U.S. 205, 232, 92 S.Ct. 1526, 1541, 32 L.Ed.2d 15 (1972); *Meyer v. Nebraska*, 262 U.S. 390, 399–401, 43 S.Ct. 625, 626–627, 67 L.Ed. 1042 (1923). In *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944), the Court explained:

"It is cardinal with us that the custody, care and nurture of the child reside first in the parents whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Id.* at 166, 64 S.Ct. at 442.

*Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1977), held that the Due Process Clause protects an unwed father's right to retain custody of his illegitimate children. There, the court considered an Illinois statute that made illegitimate children wards of the state automatically upon the mother's death. Recognizing the importance of the right to family association, the court struck down the statute because it failed to provide unwed fathers an opportunity to prove their competence as parents.[3]

"The private interest here, that of a man in the children he has sired and raised, undeniably warrants deference and, absent a powerful countervailing interest, protection. It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'come[s] to this Court with a momemtum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements.'" *Kovacs v. Cooper*, 336 U.S. 77, 95 [69 S.Ct. 448, 458, 93 L.Ed. 513] (1949) (Frankfurter, J. concurring).

"The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed 'essential,' *Meyer v. Nebraska*, 262 U.S. 390, 399 [43 S.Ct. 625, 626, 67 L.Ed. 1042] (1923), 'basic civil rights of man,' *Skinner v. Oklahoma*, 316 U.S. 535, 541 [62 S.Ct. 1110, 1113, 86 L.Ed. 1655] (1942), and '[r]ights far more precious ... than property rights,' *May v. Anderson*, 345 U.S. 528, 533 [73 S.Ct. 840, 843, 97 L.Ed. 1221] (1953)." *Id.* at 651, 92 S.Ct. at 1212.

In *Moore v. East Cleveland*, 431 U.S. 494, 499–501, 97 S.Ct. 1932, 1935–1936, 52 L.Ed.2d 531 (1977), the Supreme Court considered an East Cleveland housing ordinance limiting dwelling occupancy to members of a single family. The ordinance defined "family" so as to preclude a grandmother from living with her son and two grandsons who were first cousins. Relying on the fundamental rights of citizens to define and associate with members of their

---

**2.** *Loving* is better known for holding that Virginia's statute violated the Equal Protection Clause. Clearly, however, the court also relied on the Due Process Clause and the fundamental right to marry.

**3.** The court also held that affording procedural protections to married parents, unwed mothers and divorced parents, before taking custody of their children, while denying such protections to unwed fathers, violated the equal protection clause. *Stanley* did not rest, however, as some commentators have suggested, solely on the Equal Protection Clause. Rather, it relied primarily on the Due Process Clause, adding equal protection analysis as additional support for its result.

"family," the court declared the ordinance unconstitutional.

■ The United States Supreme Court's consistent recognition of a constitutionally protected right to family association has prompted many courts to hold that individuals have a constitutional right to the continued life of a family member.[4] It would be ironic indeed to recognize, on the one hand, the constitutional rights to marry, *Loving v. Virginia, supra,* to procreate, *Skinner v. Oklahoma, supra,* to supervise the upbringing of children, *Pierce v. Society of Sisters, supra, Prince v. Massachusetts, supra,* to retain custody of one's illegitimate children, *Stanley v. Illinois, supra,* and to live in the same residence with one's "family," *Moore v. East Cleveland, supra,* but on the other hand, to deny parents constitutional protection for the continued life of their child. State action that wrongfully kills one's child certainly interferes with fruition and fulfillment of the fundamental right to procreate. A parent cannot benefit from his constitutionally protected rights to supervise the upbringing, retain custody, or live in the same residence with a child if state action unlawfully takes the child's life. To constitutionally protect families from lesser intrusions into family life, yet allow the state to destroy the family relationship altogether, would drastically distort the concept of ordered liberty protected by the Due Process Clause. A culture that draws its strength from family values that long predate the constitution must persistently proclaim and protect those values. The Constitution stands for little if it does not protect each person's fundamental liberty to marry and raise a family. That liberty means nothing if an individual cannot assert claims against state officials who, under color of state law, destroy the right to enjoy the family bond.

■ Defendants have moved to strike all claims in excess of the damages that would be recoverable by the personal representative of Earnest Myres' estate under Colorado's survival statute.[5] Having recognized Evelyn and Louis Myres' separate § 1983 cause of action, it follows that this motion is denied. The motion survives only insofar as it seeks to limit the damages recoverable by Evelyn Myres acting in her capacity as personal representative of the estate. As several cases have recognized, the federal policies underlying § 1983 would not be served by applying Colorado's survival statute. *Jackson v. Marsh,* 551 F.Supp. 1091, 1095 (D.Colo.1982) (Judge Moore); *Sager v. City of Woodland Park,* 543 F.Supp. 282, 292–93 (D.Colo.1982) (Judge Kane). *See also Robertson v. Wegmann,* 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978); *Jones v. Hildebrant,* 432 U.S. 183, 190, 97 S.Ct. 2283, 2287, 53 L.Ed.2d 209 (1977) (Justice White dissenting from certiorari dismissal).

Finally, the plaintiffs' complaint names the estate of Earnest J. Myres as a plain-

---

**4.** *Mattis v. Schnarr,* 502 F.2d 588 (8th Cir.1974); *Brazier v. Cherry,* 293 F.2d 401 (5th Cir.1961); *Bell v. City of Milwaukee,* 498 F.Supp. 1339, 1343 (E.D.Wis.1980); *Jones v. McElroy,* 429 F.Supp. 848, 852 (E.D.Penn.1977); *Smith v. Wickline,* 396 F.Supp. 555, 560 (W.D.Okl.1975); *Pollard v. United States,* 384 F.Supp. 304, 306 (M.D.Ala.1974); *Galindo v. Brownell,* 255 F.Supp. 930 (S.D.Cal.1966); *Espinoza v. O'Dell,* 633 P.2d 455 (Colo.1981). These cases recognized a personal § 1983 claim to redress the injury to parties whose family members had been killed as a result of official state action. Thus, they hold, at least implicitly, that the constitution protects an individual's fundamental right to the companionship and support of his or her family. Because the Civil Rights Act does not provide expressly for a wrongful death remedy, several of the cases cited above recognized the § 1983 federal cause of action by incorporating state law wrongful death remedies pursuant to 42 U.S.C. § 1988 (1982). State wrongful death statutes applicable pursuant to § 1988 do not create new federal rights. Rather, the fundamental constitutional *right* to family association pre-exists, and § 1988 provides for incorporation of state law *remedies* to redress the constitutional wrong. Cases that have criticized this line of authority have blurred the distinction between a federal right cognizable under § 1983 and the availability of a state law remedy under § 1988.

**5.** Colo.Rev.Stat. § 13–20–101(1) (1973). This provision limits the recoverable personal injury damages to expenses and loss of earnings sustained prior to the death of the plaintiffs' decedent.

tiff. Under Colo.Rev.Stat. § 13–20–101(2) (Supp.1984), the estate is not a proper party.[6]

Accordingly,

IT IS ORDERED that the claim in the name of the estate of Earnest J. Myres is dismissed.

IT IS FURTHER ORDERED that the defendants' motion to dismiss and strike is denied.

---

**6.** Only the personal representative of an estate may bring actions on behalf of the estate. Here, Evelyn R. Myres as the representative of her son's estate is the only party who can assert claims on behalf of his estate.