EALEY v CITY OF DETROIT

Docket No. 75369. Submitted April 17, 1985, at Detroit.—Decided July 16, 1985. Leave to appeal applied for.

Daisey Ealey, personal representative of the estate of J. C. Ealey, Jr., and Daisey and J. C. Ealey, Sr., J. C. Ealey, Jr.'s parents, individually brought an action in the Wayne Circuit Court against the City of Detroit, the Detroit Police Department and police officers Commander Phillip Arreola and Patrick Fitzgerald, alleging assault and battery, negligence and denial of civil rights as a result of J. C. Ealey, Jr.'s having been shot by the officers. The court, Helene N. White, J., granted a judgment on a jury verdict in favor of the estate against Arreola and the

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Appeal and Error § 545 et seq.
Construction and application of provision of Rule 51 of Federal Rules of Civil Procedure requiring party objecting to instructions or failure to give instruction to jury, to state "distinctly the matter to which he objects and the grounds for objections." 35 ALR Fed 727.

[2] Am Jur 2d, Assault and Battery §§ 79, 162-164.
Right of peace officer to use deadly force in attempting to arrest fleeing felon. 83 ALR3d 174.

[3] Am Jur 2d, Municipal, School, and State Tort Liability §§ 243 et seq., 257-259.
Modern status of rule excusing governmental unit from tort liability on theory that only general, not particular, duty was owed under circumstances. 38 ALR4th 1194.
Defense of good faith in action for damages against law enforcement official under 42 USCS § 1983, providing for liability of person who, under color of law, subjects another to deprivation of rights. 61 ALR Fed 7.

[4] Am Jur 2d, Municipal, School, and State Tort Liability § 85 et seq.
Modern status of rule excusing governmental unit from tort liability on theory that only general, not particular, duty was owed under circumstances. 38 ALR4th 1194.

[5] Am Jur 2d, Municipal, School, and State Tort Liability § 243 et seq.
Modern status of rule excusing governmental unit from tort liability on theory that only general, not particular, duty was owed under circumstances. 38 ALR4th 1194.

[6] Am Jur 2d, Parent and Child §§ 101-105.
See the annotations in the ALR3d/4th Quick Index under Parent and Child.

city on the assault and battery claim and in favor of the parents against Arreola on the civil rights claim. No damages were awarded on the negligence claim. Interest, costs and attorney fees were also awarded. The city and Arreola appealed and the plaintiffs cross-appealed. *Held:*

1. Appellants claimed an error in the court's instruction on the defense of self-defense, but the issue was not preserved for appeal. The Court of Appeals is precluded from reviewing alleged errors in jury instructions absent manifest injustice where the party failed to object to the complained-of instructions. Considering the instructions as a whole, the Court of Appeals found no manifest injustice.

2. Appellants alleged that the verdicts must be set aside because they were inconsistent and allege that the trial court erred in not granting a directed verdict. The jury found that Officer Fitzgerald acted in good faith while Commander Arreola did not. A reasonable and good faith belief in the necessity of the police action taken is a defense to a civil rights deprivation action against police officers. The same basis of a defense to a civil rights action is the basis for a self-defense or governmental immunity defense. The record discloses only evidence of a good faith and reasonable belief on Commander Arreola's part. The court erred in not granting a directed verdict for him.

3. Commander Arreola was entitled to the defense of governmental immunity. Employees of a governmental agency are immune from tort liability where they are 1) acting during the course of their employment, and acting, or reasonably believe they are acting, within the scope of their authority, 2) acting in good faith, and 3) performing discretionary-decisional, as opposed to ministerial-operational acts. Police officers, especially when faced with a potentially dangerous situation, must be given a wide degree of discretion in determining what type of action will best ensure the safety of the individuals involved and the general public, the cessation of unlawful conduct, and the apprehension of wrongdoers. The determination of what type of action to take is a discretionary-decisional act entitled to immunity.

4. The parents of an adult child who is neither living with nor supporting them has no right of action under the federal civil rights statute for the death of their child. The court erred in granting a judgment for the parents based on a civil rights deprivation claim.

5. Since plaintiffs are entitled to no judgment, they are entitled to no attorney fee award.

Reversed.

GRIBBS, P.J., concurred in the result only.

1. Appeal — Jury Instructions — Preserving Question.

The Court of Appeals is precluded from reviewing alleged errors in jury instructions absent manifest injustice where the party failed to object to the complained-of instructions.

2. Assault and Battery — Deadly Force — Self-Defense — Police Officers.

A police officer may use deadly force in defense of his own life, or in defense of another.

3. Civil Rights — Actions — Defenses — Good Faith Defense — Self-Defense — Governmental Immunity.

A reasonable and good faith belief in the necessity of the police action taken is a defense to a civil rights deprivation action against police officers; the same basis of a defense to a civil rights action is the basis for a self-defense or governmental immunity defense.

4. Governmental Immunity — Government Employees.

Employees of a governmental agency are immune from tort liability where they are 1) acting during the course of their employment, and acting, or reasonably believe they are acting, within the scope of their authority, 2) acting in good faith, and 3) performing discretionary-decisional, as opposed to ministerial-operational, acts.

5. Governmental Immunity — Police Officers.

Police officers, especially when faced with a potentially dangerous situation, must be given a wide degree of discretion in determining what type of action will best ensure the safety of the individuals involved and the general public, the cessation of unlawful conduct, and the apprehension of wrongdoers; the determination of what type of action to take is a discretionary-decisional act entitled to immunity.

6. Civil Rights — Parent and Child.

The parents of an adult child who is neither living with nor supporting them has no right of action under the federal civil rights statute for the death of their child (42 USC 1983).

*Shively, McCloskey, Corriveau & Gardner* (by *Gary Edward Gardner),* for plaintiffs.

*David H. Fink, P.C.* (by *David H. Fink),* for City of Detroit and Phillip Arreola.

Before: GRIBBS, P.J., and T. M. BURNS and R. B. MARTIN,* JJ.

PER CURIAM. A police officer's confrontation with an armed civilian resulted in the death of the civilian and a lawsuit by the decedent's estate and his parents against the City of Detroit, the Detroit Police Department, and two officers.

On December 11, 1979, shortly after 7 a.m., Audrey Spears carried her four-month-old baby as she walked to a residence on Seebaldt Street in Detroit. As she approached the residence, a man, later identified as J. C. Ealey, Jr., came toward her from the side of the house. He pointed a rifle directly at her and waved it back and forth as he said someone was after him. When Spears was let into the house, she closed the front door, leaving Ealey on the enclosed front porch with the rifle. She saw Ealey lying on the porch up against the wall with the gun pointed toward the front door. She called the police. Officers Fitzgerald and Dessinger arrived at the scene and used a flashlight to see the gunman on the porch who pointed the gun directly at them. They radioed for assistance. Commander Arreola arrived shortly, talked to the officers and went to the rear of the house where he was met by an hysterical Audrey Spears. He instructed the occupants of the house to leave by the back alley. He went to the front window and saw Ealey on the porch with a rifle in a ready position aimed at the front door. Commander Arreola had Officer Fitzgerald come into the house through the back door and issued an order for maximum cover for all other responding units. Arreola took up a position near the front door where he could see the gunman through a living room window and

---

* Former circuit judge, sitting on the Court of Appeals by assignment.

Fitzgerald was in the same room at another window where he could likewise see Ealey. Mr. Ealey, to the east of the front door, had his gun up to his shoulder aimed westerly toward the front door. Arreola radioed for a car he knew would have a shotgun, tear gas equipment, bulletproof vests, and a bullhorn. While the police were awaiting the arrival of this unit, Ealey partially stood up and pointed the weapon towards the street. Commander Arreola testified that he feared the gunman was going to fire at policemen or civilians who might be on the street, so he opened the front door to distract him. Arreola yelled, "Police, drop your gun." Fitzgerald testified Arreola also said, "You have one gun at your back and one gun at your side. Drop your gun."

Ealey turned towards Commander Arreola and pointed his loaded rifle at him. Fitzgerald heard the order and saw Ealey turn and aim his rifle in the direction of his commander. He feared for the commander's life so he broke the front window pane and rapidly fired six shots. Arreola, seeing a rifle pointed at him from five to eight feet away, fired five rapid shots at Ealey at the same time Fitzgerald was firing. Some of the shots apparently struck Ealey after he was lying on the porch. All the shooting occurred in a matter of one or two seconds. An ambulance was summoned by radio and arrived within a few minutes and transferred Ealey to Ford Hospital where he died of these wounds.

Ealey's parents and his estate sued Arreola, Fitzgerald, the Detroit Police Department, and the City of Detroit. From answers to special questions given to the jury, the court awarded a judgment of $10,000 for the estate against Arreola and the City of Detroit on an assault and battery charge, and the parents were awarded $240,000 against Ar-

reola on the civil rights claim. The jury found Arreola was negligent in confronting the decedent but specifically found no damages arising from this negligence. Interest was added to these amounts together with $3,700 attorney fees, and $957.15 costs for the defendants' rejection of a mediation award, and $10,441.24 in attorney fees under the civil rights act.

The city and Arreola appealed and the plaintiffs cross-appealed on the basis of the court's directing a verdict against them on their claim that the City of Detroit violated plaintiffs' constitutional rights by having a policy of providing first aid only by calling emergency medical service. Plaintiffs further claim the trial court had no jurisdiction to hear the defendants' motion for a new trial or a judgment notwithstanding the verdict because it was filed 21 days after the judgment was entered.

Appellants claim reversible error in the court's instructing the jury regarding Arreola's defense of self-defense. The court instructed:

"With regards to the defense of self-defense, the defendant, Commander Arreola, has the burden of proof on the following elements:

"1. That he believed that he was in danger of immediate death or serious bodily injury.

"2. That the belief was reasonable.

"3. That the degree of force used in the defense of self appeared to be reasonably necessary."

The record indicates the defendants did not object to this instruction. Absent manifest injustice, this Court is precluded from reviewing the alleged error. GCR 1963, 516.2, and *People v Small,* 120 Mich App 442; 327 NW2d 504 (1982). Although this is a civil case, each side has cited criminal cases to bolster its respective position.

Appellant claimed the test is what the defendant "honestly" or "truly" believed and not what a reasonable belief would be under the circumstances. He relies on *People v Burkard,* 374 Mich 430; 132 NW2d 106 (1965), and *People v Robinson,* 79 Mich App 145; 261 NW2d 544 (1977). We believe the more recent case of *People v Doss,* 406 Mich 90, 102; 276 NW2d 9 (1979), controls. There the Court ruled:

"However, like the private citizen, the police officer who claims self-defense must have *reasonably* believed himself to have been in great danger and that his reponse was necessary to save himself therefrom." (Emphasis in original.)

In any event, considering the whole of the trial, there is no manifest injustice arising from the instruction given.

Appellants allege the verdicts must be set aside because they were inconsistent. In answering special questions, the jury decided Officer Fitzgerald had a right to defend the commander but that the commander had no right to defend himself under the exact same circumstances. If, from the evidence in the case, the jury had a right to determine Fitzgerald was blameless in determining to act in defense of his commander, although the commander himself was not properly acting in self-defense, the verdicts were not reversibly inconsistent.

Appellants claim the trial court erred in not granting a directed verdict and in not granting a judgment notwithstanding the verdict based on the uncontroverted evidence. Appellants further claim a right to reversal because of the qualified good faith immunity of defendant Arreola. *Harris v Pirch,* 677 F2d 681 (CA 8, 1982). This Court consid-

ers these claims with some trepidation and ambivalence. Our society is more and more critical of courts because it feels the judicial system too often supports the person committing crimes and dramatically fails to support the victims of crime and the police in their attempts to slow the growing tide of criminal activity. On the other hand, appellate courts are more and more unwilling to disturb factual findings made by juries.

We believe, in looking at the totality of the evidence surrounding the shooting in the case as shown by the complete transcript, there is insufficient evidence to support the jury's verdict and the defendants' motion for directed verdict should have been granted. *Kupkowski v Avis Ford, Inc,* 51 Mich App 668; 215 NW2d 767 (1974), *aff'd* 395 Mich 155; 235 Mich 324 (1975).

It is uncontroverted that, when Arreola arrived at the scene, he was informed by a "hysterical woman" there was a "crazy man on the porch with a rifle". He understood from an officer that the man had forced his way into the house at gunpoint. He saw the man on the porch with a rifle held at ready pointed toward the front door of the house. He knew officers were arriving at the scene and he thought some of them and perhaps pedestrians might be on the street. After a time, when the decedent arose from the porch floor and pointed his rifle towards the street, the officer had to make a quick decision. Should he wait and perhaps have an innocent civilian killed or wounded, or should he take an affirmative step to see if he could control the situation? He risked his life rather than possibly risking the life of another. He opened the door and yelled, "Police, drop your gun." As he testified: "In not a second * * * the man turned and spun toward me pointing the weapon in my direction."

At that time the officer honestly and reasonably believed he was in imminent danger of death or great bodily harm and that shooting was necessary to prevent the threatened danger. It is hornbook law that a person may defend himself from unlawful attack. *Kent v Cole,* 84 Mich 579; 48 NW 168 (1891), *People v Lennon,* 71 Mich 298; 38 NW 871 (1888), *People v Robinson,* 79 Mich App 145; 261 NW2d 544 (1977), and *People v Green,* 113 Mich App 699; 318 NW2d 547 (1982). As was said in *Jenkins v Starkey,* 95 Mich App 685, 690; 291 NW2d 170 (1980):

"A peace officer may use deadly force in defense of his own life, in defense of another, or in pursuit of a fleeing felon."

Even a civilian security guard may meet deadly force with deadly force. *People v Joeseype Johnson,* 75 Mich App 337; 254 NW2d 667 (1977). Reasonable and good faith belief in the necessity of police action is a defense to a civil rights claim. *Harris v Pirch, supra,* p 686:

"In § 1983 actions for damages defendants are entitled to a qualified immunity from liability based on a good faith belief in the propriety of their actions and reasonable grounds for that belief. *Procunier v Navarette,* 434 US 555; 98 S Ct 855; 55 L Ed 2d 24 (1978), *Scheuer v Rhodes,* 416 US 232; 94 S Ct 1683; 40 L Ed 2d 90 (1974). Therefore, '[w]hen a court evaluates police conduct relating to an arrest, its guideline is good faith and probable cause.' * * * 'Thus, even though a police officer may not have chosen the wisest or most reasonable course of action, he will not be civilly liable if his conduct is based on a reasonable and good faith belief that it was necessay under the circumstances.' "

We recognize the jury found that Officer Fitzger-

ald acted in "good faith" but found that Arreola did not act in "good faith".

When did Arreola fail to act in good faith? Did he fail to act in good faith when he pulled the trigger on his service revolver? The evidence is clear he acted in a reasonable and good faith belief his life was imperiled by a "crazy gunman" who from a few feet away pointed a rifle at him. If Fitzgerald acted in good faith when he fired his firearm upon seeing the gunman aim his rifle at the other officer, then the person actually staring into the barrel of the rifle in good faith could also shoot to defend himself.

The only other time the commander might not have been acting in good faith was when he opened the front door and told Ealey, "Police, drop your gun." The evidence all supports this to have been a reasonable and good faith action by the officer. It is far easier for a jury and court long after the fact in the quiet contemplation of a jury room or in the ivory tower of a law library to determine what more prudent and practical action could have been taken, but a police officer often has but a short time to make decisions and make them he must. There is absolutely no evidence here that the officer opened the door in a bad faith attempt to force Ealey into a fatal confrontation. If such confrontation was the desire of the officer, he could have arranged it far more safely for himself by calling to Ealey as the gunman lay pointing his rifle at the house door with the officer in a darkened room behind him.

We note that in the *Zavala v Zinser* case, *Ross v Consumers Power Co, (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984), Zavala was shot and seriously wounded by participants in a fight. Two city police officers were nearby in a marked police vehicle and had not intervened in the fight. They

had called for backup assistance. There the Supreme Court thought the police officers faced with a dangerous situation must be accorded a wide degree of discretion in determining what type of action to take to ensure the safety of individuals involved and the safety of the general public. This discretionary-decisional act in that case gave the officers governmental immunity.

We don't here hold that Michigan state-granted governmental immunity can protect a police officer from a rightly brought § 1983 civil rights action. We do rule that the same basis of a defense to the civil rights action is a basis for a self-defense or governmental immunity defense. Did the officer act in the good faith belief his action was necessary under the circumstances? The plaintiff in *Zavala* was an innocent member of the general public, one of the persons police are hired to protect. The police decided to delay his immediate protection by waiting for a backup. Plaintiff was seriously injured but could not recover from the officers. Here Arreola acted positively rather than waiting for more backup in order to protect officers and innocent civilians who might have been on the street. Now the gunman, rather than the innocent civilian, is struck by gunfire. Is the policeman then to be held liable? We think not. To hold him liable absent any evidence whatsoever of bad faith would be to send a message to police everywhere: "Don't risk your life to protect members of the general public, wait a while for more help. You policemen must decide if you want to have an innocent person be wounded or killed with no responsibility to yourself or have the gunman be wounded or killed and have you be financially responsible to him or his estate."

The evidence contained testimony of other occasions when Arreola had been confronted by armed

individuals in extremely tense and dangerous situations where he had reacted without injuring the assaulters even though random shots had been fired in anger and others threatened.

Having found in this transcript only evidence of a good faith and reasonable belief on behalf of Arreola, we must reverse the trial court's failure to grant a directed verdict. A panel of this Court in an unpublished and nonprecedential opinion has ruled the same in a similar case involving a civil rights action. *Nowak v George Potter* (Docket No. 78179, decided March 28, 1985).

Appellants claim they have governmental immunity from tort liability. Plaintiffs concede the City of Detroit is not liable on the assault and battery charge because of governmental immunity, but insist the individual officer is.

Our appellate courts have struggled with and been divided about when governmental immunity protects. The latest case sets out a three-prong test. Employees such as police officers are immune from tort liability if and only if they are:

"a) acting during the course of their employment, and acting, or reasonably believe they are acting, within the scope of their authority;

"b) acting in good faith; and

"c) performing discretionary-decisional, as opposed to ministerial-operational act." *Ross v Consumers Power Co, (On Rehearing), supra,* p 592.

We hold Arreola was acting in the course of his employment and was and reasonably believed he was acting within the scope of his employment. In making the decision as to where to place men and what steps to take when Ealey arose and pointed his rifle towards the street, Arreola was performing a discretionary as opposed to a ministerial act. At pages 659-660 in *Ross, supra,* the Court stated:

"Police officers, especially when faced with a potentially dangerous situation, must be given a wide degree of discretion in determining what type of action will best ensure the safety of the individuals involved and the general public, the cessation of unlawful conduct, and the apprehension of wrongdoers. The determination of what type of action to take, *e.g.*, make an immediate arrest, pursue a suspect, issue a warning, await backup assistance, etc., is a discretionary-decisional act entitled to immunity."

As we have noted, the jury in answer to a special question found that the commander had not acted in good faith. However, we have found no evidence of his lack of good faith. In the total context of the trial we believe the genuinely sympathy-provoking condition of the bereaved parents without a doubt outweighed in the jury's mind the precarious position of the officer who was suddenly confronted with an apparently mentally-unstable gunman pointing a rifle directly at him. But sympathy for the surviving parents does not create a lack of good faith.

Appellants further allege that the jury award was excessive, unfair, and based on improper consideration. Plaintiffs urge that this question is not properly before us. However, the trial court, at appellants' request, did consider the issue in deciding the delayed motion for a new trial and the issue is preserved for appeal. *Froling v Bischoff,* 73 Mich App 496; 252 NW2d 832 (1977).

Appellants argue that plaintiffs sought no monetary damages for themselves for the violation of any constitutional right and a judgment for $240,-000 was thus improperly beyond the *ad damnum* clause. *Phillips v Rolston,* 376 Mich 264; 137 NW2d 158 (1965). We have difficulty with the premise that plaintiffs can amend their pleadings after judgment and after the case is before the

Court of Appeals, but the parties tried the case and went to the jury knowing plaintiffs were asking for a money judgment for civil rights violations. GCR 1963, 518.3 provides:

"Except as to a party against whom a judgment is entered by default, every final judgment shall grant relief to which the party in whose favor it is rendered is entitled, even if the party does not demand such relief in his pleading."

The decedent was 34 years of age. He had been unemployed and supported by general assistance. He had not lived with his parents for 14 or 15 years and had contributed but little financial support to his parents even when he briefly returned home during his adult years. As far as whether or not damages of $240,000 is so excessive as to shock the judicial conscience, *Bernette v Mackworth G Rees, Inc,* 109 Mich App 547; 311 NW2d 417 (1981), we need make no determination as we are reversing the granting of any judgment.

While not necessary to this opinion we do consider other issues.

Appellants assert that the parents are not entitled to the judgment on the civil rights claim because they as parents were deprived of no civil right protected by federal statutes or constitution. This claim was presented in Count VI, ¶ 47, of the amended complaint. This count was an allegation by all the plaintiffs,

"That the conduct of the defendants and each of them, by their actions and conduct deprived the decedent of rights secured by the common law, the U S Constitution and the State of Michigan Constitution including the right to due process with respect to the taking of his life and his liberty and the right to be free of unreasonable governmental interference."

There is a serious issue as to whether or not parents of a 34-year-old man who is living and has lived away from the parents' home nearly all of his life since he was 20 have been deprived of a federally-protected civil right by his death. There can be no question but that various courts have ruled parents have a protected civil right in the life and control of a child and the existence of the family relationship. *Stanley v Illinois,* 405 US 645; 92 S Ct 1208; 31 L Ed 2d 551 (1972), *Caban v Mohammed,* 441 US 380; 99 S Ct 1760; 60 L Ed 2d 297 (1979), *Meyer v Nebraska,* 262 US 390; 43 S Ct 625; 67 L Ed 1042 (1922), and *Mattis v Schnarr,* 502 F2d 588 (CA 8, 1974); 547 F2d 1007 (1976).

However, these cases and others were not concerned, as our case is, with a parent's civil rights in the life of an *adult* child who is not living with them or supporting them.

*Jackson v Marsh,* 551 F Supp 1091, 1094 (D Colo, 1982), is a case dealing directly with the question raised here. In *Jackson,* as here, a city police officer shot and killed an adult son. The parents sued under 42 USC 1983. The defendant's motion for summary judgment was granted because the court found that the parents had no civil right protected by that statute in the life of an adult son. *White v Talboys,* 573 F Supp 49, 51 (D Colo, 1983), cites *Jackson, supra:*

"Plaintiffs also allege that they were deprived of their constitutional right to a family relationship through the shooting of their son. * * * Now I am convinced from reading Judge Moore's opinion in *Jackson v Marsh,* 551 F Supp 1091 (1982), that the parents of the deceased are asserting a right that is not guaranteed by the constitution. * * * Plaintiffs may only recover for deprivations of their own constitutional rights, and not the rights of another. * * * Plaintiffs claims for relief based on a constitutional deprivation of their own rights due to

their son's death, are dismissed. The right to the contin-
ued life of an offspring is not a cognizable constitutional
claim under § 1983."

Thus, the parents had no right to an award
under the civil rights statute for the death of their
son under the facts of that case.

This ruling leads us to the factual situation in
our case. The special question asked and the an-
swers of the jury on this portion of the case were:

"18. Did defendant Commander Phillip Arreola vio-
late plaintiff J. C. Ealey, Jr., deceased's, constitutional
rights?
"Yes.
"19. What is the total dollar amount of plaintiffs'
damages under their civil rights claim as against Com-
mander Phillip Arreola and/or Police Officer Patrick
Fitzgerald?
"$240,000."

We note the court instructed the jury:

"The plaintiffs are entitled to damages to compensate
them for the loss of their right to their child, if you
believe they have sustained their burden. Parenthood is
a substantive interest of surpassing value that is pro-
tected by the Constitution from deprivation without due
process of law. Thus, you should award damages suffi-
cient to compensate the plaintiffs for the loss of this
right if you find the death of their child was unlawful."

This certainly would give the jury the right to
consider the loss of the son as a substantive civil
right loss to accrue to the parents. Such a right in
the parents does not exist.

The special question relative to the amount of
damages asked about damages to all of the plain-
tiffs, not just to the estate under the wrongful
death act. The judgment was awarded solely to the

parents as individuals. They were entitled to no damages for violation of civil rights. What the jury might have awarded the estate is a matter of conjecture, so this part of the judgment was erroneous.

Defendants have spent considerable time and energy in arguing and briefing their contention that plaintiffs failed to properly plead a cause of action under 42 USC 1983. This is another issue we need not decide.

Appellants claim the trial court erred by granting attorney fees under 42 USC 1983. If the plaintiffs had been entitled to the judgments as entered, we would affirm the grant of attorney fees. *Northcross v Memphis City Schools Bd of Ed,* 611 F2d 624 (CA 6, 1979). Since plaintiffs are entitled to no judgment, they are entitled to no attorney fees.

The record demonstrates plaintiffs' assertions on their cross-appeal are without merit.

Judgments against the city and Arreola must be reversed.

GRIBBS, P.J., concurs in the result only.