Jose **VALDIVIESO ORTIZ**, et al., Plaintiffs, Appellees,

v.

Melquiades **BURGOS**, et al., Defendants, Appellees.

**Pablo Robles Robles**, et al., Plaintiffs, Appellants.

No. 86–1484.

United States Court of Appeals, First Circuit.

Heard Oct. 6, 1986.
Decided Dec. 12, 1986.

Jose E. Fernandez-Sein, Santurce, P.R., with whom Nora L. Rodriguez-Matias, Rio Piedras, P.R., and Law Offices of Nachman & Fernandez-Sein, Santurce, P.R., for appellants.

Rafael E. Garcia-Rodon, with whom Law Offices of Garcia Rodon Correa Marquez & Valderas, Hato Rey, P.R., for appellees.

Before COFFIN, Circuit Judge, BROWN,* Senior Circuit Judge, and BREYER, Circuit Judge.

COFFIN, Circuit Judge.

This case arises out of the death of Jose Valdivieso Ortiz, who allegedly was beaten by guards and dealt a fatal blow to the head while an inmate at the Guayama Regional Detention Center in Puerto Rico. The narrow question before us is whether his stepfather and siblings have a constitutionally protected interest in the companionship of their adult son and brother, deprivation of which is actionable under 42 U.S.C. § 1983. Because we conclude that they do not, we affirm the judgment of the district court.

## I.

The original plaintiffs in this lawsuit were decedent's mother, suing both on her own behalf and as representative of her son's estate, his stepfather, his three brothers and one sister. Defendants filed a motion for partial summary judgment seeking dismissal of all claims except those filed on behalf of decedent, claiming that relatives have no personal claim under section 1983 for the wrongful death of a family member. The district court granted the motion as to the stepfather and siblings, but allowed the case to go forward on the claims asserted by the mother personally and on

her son's behalf. A jury awarded $20,000 to the mother on her personal claim and $30,000 on her son's claim. The stepfather and siblings appeal dismissal of their claims.[1]

## II.

To prevail in an action brought under section 1983 a plaintiff must show that he or she was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States. In this case, appellants claim that the state deprived them of their constitutional right to their stepson's or brother's companionship, which they claim is protected under the fourteenth amendment as an element of personal liberty. Although the Supreme Court has never considered whether family members have a liberty interest in the continued life of a relative,[2] the Court has, beginning with *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) and *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), consistently recognized the fundamental right to "freedom of personal choice in matters of family life," *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982), as well as the important interest of a parent in "the companionship, care, custody, and management of his or her children," *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972).

After careful consideration, we conclude that this precedent establishing constitutional protection for various aspects of family life falls short of establishing a liberty interest for appellants in the circumstances of this case. Until now, the Supreme Court cases involving the familial

---

* Of the Fifth Circuit, sitting by designation.

1. Although our opinion means that the claim asserted personally by decedent's mother also would fall, defendants did not appeal the district court's decision allowing her claim. Defendants decided against such an appeal on the theory that she would have been entitled to damages, in any case, on a state law claim.

2. In two cases in which the issue might have been addressed, the Court dismissed certiorari as improvidently granted. *See Jones v. Hildebrant,* 191 Colo. 1, 550 P.2d 339 (1976), *cert. dismissed,* 432 U.S. 183, 97 S.Ct. 2283, 53 L.Ed.2d 209 (1977); *Espinoza v. O'Dell,* 633 P.2d 455 (Colo.1981), *cert. dismissed,* 456 U.S. 430, 102 S.Ct. 865, 72 L.Ed.2d 237 (1982).

liberty interest have fallen generally into two categories, neither of which applies here. First, the Court has held as a matter of substantive due process that the government may not interfere in certain particularly private family decisions. These include the decisions whether to procreate, *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); whether to school one's children in religious as well as secular matters, *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); and defining the "family" with whom one chooses to live, *Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). *Cf. Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944) (recognizing private realm of family life but holding that statute prohibiting minors from selling merchandise in public places does not violate freedom of religion or equal protection).

These substantive due process cases do not hold that family relationships are, in the abstract, protected against all state encroachments, direct and indirect, but only that the state may not interfere with an individual's right to choose how to conduct his or her family affairs. The emphasis in these cases on *choice* suggests that the right is one of preemption; rather than an absolute right to a certain family relationship, family members have the right, when confronted with the state's attempt to make choices for them, to choose for themselves. This case does not involve such a choice.

Moreover, in the cases involving parental rights, the Supreme Court was concerned with preventing government interference with the rearing of young children. The Court has given particular "constitutional respect to a natural parent's interest both in controlling the details of the child's upbringing ... and in retaining the custody and companionship of the child," *Lassiter v. Department of Social Services*, 452 U.S. 18, 38–39, 101 S.Ct. 2153, 2165, 68 L.Ed.2d 640 (1981) (Blackmun, J., dissenting) (citations omitted). *See, e.g., Pierce*, 268 U.S. at 534–35, 45 S.Ct. at 573; *Wisconsin v. Yoder*, 406 U.S. 205, 232–33, 92 S.Ct. 1526, 1541–42, 32 L.Ed.2d 15 (1972); *Moore*, 431

U.S. at 505, 97 S.Ct. at 1938. This case does not involve the rearing of a young child. Thus, in two significant respects, this case differs from those in which the Supreme Court has recognized a substantive right in the parentchild relationship. Decedent, who was over 21 at the time of his death, was not a minor child still within "the care, custody, and management" of his parents. Nor did the state seek here to impose upon his family its own choice as to how or by whom he should be reared.

Appellants also are not within the protective umbrella of the second category of Supreme Court cases. Those cases have held only that when the state seeks to change or affect the relationship of parent and child in furtherance of a legitimate state interest, such as in cases involving termination of parental rights, *Santosky*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); determining paternity, *Little v. Streater*, 452 U.S. 1, 101 S.Ct. 2022, 68 L.Ed.2d 627 (1981); and deciding whether an unwed father may retain custody of his children after their mother's death, *Stanley*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), a fourteenth amendment liberty interest is implicated and the state therefore must adhere to rigorous procedural safeguards.

Admittedly, it seems logical to argue that the parent-child relationship was at least as irreversibly affected here as in a severance of parental relationship proceeding, and that harm to that relationship deserves either recognition in a section 1983 cause of action or, at a minimum, a searching inquiry of the adequacy of state relief. But we think it significant that the Supreme Court has protected the parent only when the government directly acts to sever or otherwise affect his or her legal relationship with a child. The Court has never held that governmental action that affects the parental relationship only incidentally—as in this case—is susceptible to challenge for a violation of due process. Moreover, as in the substantive due process cases involving parents and children, the right to procedural due process has not been extended beyond settings in which the state was attempting to affect the relationship

between a parent and his or her *minor* child.

We decline, on this record, to make the leap ourselves from the realm of governmental action directly aimed at the relationship between a parent and a young child to an incidental deprivation of the relationship between appellants and their adult relative. *Accord Ealey v. Detroit,* 144 Mich.App. 324, 375 N.W.2d 435 (1985), *cert. denied,* — U.S. ——, 107 S.Ct. 401, 93 L.Ed.2d 354 (1986) (rejecting parental right where adult child is not living with or supporting parents); *White v. Talboys,* 573 F.Supp. 49 (D.Colo.1983); *Jackson v. Marsh,* 551 F.Supp. 1091 (D.Colo.1982). Although distinguished courts have taken such a step,[3] their cases have involved at least one legal parent, who arguably has the strongest claim for a constitutional remedy in these circumstances. We have before us a stepfather and siblings.[4]

Although we recognize and deplore the egregious nature of the alleged government action in this case, we hesitate, in the rather novel context of this case, to erect a new substantive right upon the rare and relatively uncharted terrain of substantive due process when case law, logic and equity do not command us to do so. It does not necessarily follow that the incidental deprivation of even a natural parent's parental rights is actionable simply because the relevant deprivation of life is shocking. In addition, a conclusion that governmentally caused termination of, or encroachment on, the parental interest in the continued relationship with a child always is actionable would constitutionalize adjudication in a myriad of situations we think inappropriate for due process scrutiny, including the alleged wrongful prosecution and incarceration of a child or the alleged wrongful discharge of a child from a state job, forcing the child to seek employment in another part of the country. Moreover, the problem of giving definition and limits to a liberty interest in this vast area seems not only exceedingly difficult but to a considerable extent duplicative of the widespread existence of state causes of action, as in this case, which provide some compensation to grieving relatives.

---

3. *See, e.g., Kelson v. City of Springfield,* 767 F.2d 651, 653–55 (9th Cir.1985); *Bell v. City of Milwaukee,* 746 F.2d 1205, 1242–48 (7th Cir.1984) (recognizing a parental right but specifically rejecting right of siblings); *Mattis v. Schnarr,* 502 F.2d 588, 593–95 (8th Cir.1974); *Myres v. Rask,* 602 F.Supp. 210, 211–13 (D.Colo.1985); *Jones v. McElroy,* 429 F.Supp. 848, 852–53 (E.D.Penn. 1977). *See also Logan v. Hollier,* 711 F.2d 690, 690–91 (5th Cir.1983), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1909, 80 L.Ed.2d 458 (1984) (remanding for determination of whether mother has cognizable claim under section 1983 "for the injury to her constitutionally protected liberty interest in parenthood").

One court has found that both parents and siblings have an actionable claim under section 1983 for loss of a family member, although only if they allege an intentional deprivation of their rights. *Trujillo v. Board of County Commissioners of the County of Santa Fe,* 768 F.2d 1186, 1188–90 (10th Cir.1985).

4. Some Supreme Court cases acknowledging the personal liberty interest of parents in the "companionship, care, custody, and management of his or her children," *Stanley,* 405 U.S. at 651, 92 S.Ct. at 1212, suggest that this right may extend only to natural parents. In *Smith v. Organization of Foster Families,* 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977), which involved a challenge to New York State and City procedures for the removal of foster children from foster homes, the Court avoided deciding whether foster parents have a liberty interest in their family-like associations. *Id.* at 846–47, 97 S.Ct. at 2110–11. In *Santosky,* the Court referred specifically to the *natural* parent's interest in the relationship with his or her child, 455 U.S. at 753, 102 S.Ct. at 1394, and Justice Blackmun also described *Lassiter* as declaring—what *Lassiter* did not—that it was "a natural parent's" interest that was "far more precious than any property right." *Id.* at 758–59, 102 S.Ct. at 1397. More recently, however, in *Lehr v. Robertson,* 463 U.S. 248, 261, 103 S.Ct. 2985, 2993, 77 L.Ed.2d 614 (1983), the Supreme Court held that "the mere existence of a biological link" does not entitle an unwed father to the same constitutional protection accorded a father who has "demonstrate[d] a full commitment to the responsibilities of parenthood". The Court has not decided whether a fully developed parental relationship, absent a biological or adoptive link, would entitle a stepparent or other guardian to the protection of the fourteenth amendment.

The Court also has given no express attention to the relationship among brothers and sisters. *See Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (struck down statute having the effect of preventing grandmother from living with two grandsons).

We emphasize that in denying a cause of action to appellants, we seek neither to minimize the loss of a family member nor to denigrate the fundamental liberty interest in matters of family life that has long been a part of our constitutional fabric. But even an interest of great importance may not always be entitled to constitutional protection, *see Rodriguez v. San Antonio School District*, 411 U.S. 1, 30–35, 93 S.Ct. 1278, 1295–97, 36 L.Ed.2d 16 (1973) (public education is of " 'grave significance' " but not a fundamental right). The Supreme Court recently has stated that the "intangible fibers that connect parent and child" are "sufficiently vital to merit constitutional protection *in appropriate cases*," *Lehr*, 463 U.S. at 256, 103 S.Ct. at 2990 (emphasis added). Our conclusion is simply that, in light of the limited nature of the Supreme Court precedent in this area, it would be inappropriate to extend recognition of an individual's liberty interest in his or her family or parental relationship to the facts of this case.

*The judgment of the district court is affirmed.*