tle Beach Police Department; and Thomas Leath, City Manager, City of Myrtle Beach, Defendants.

**Civ. A. No. 4:89–1451–15.**

United States District Court,
D. South Carolina,
Florence Division.

Nov. 22, 1989.

**Lorene WILLARD and Bobby Willard, Plaintiffs,**

v.

**CITY OF MYRTLE BEACH, SC, a Municipal Corporation; Joe Levy, Individually and as a Police Officer of City of Myrtle Beach Police Department; J. Stanley Byrd, Chief, City of Myrtle Beach Police Department; William Franklin Davis, Jr., Police Officer of City of Myrtle Beach Police Department; John King, Police Officer of City of Myrtle Beach Police Department; Robert Henegar, Captain, City of Myr-**

Janet T. Butcher, Hilton Head Island, S.C., for plaintiffs.

H. Franklin Burroughs, Lovelace & Battle, P.A., Conway, S.C., for defendants.

## ORDER

HAMILTON, District Judge.

This action arises out of the alleged unlawful arrest and detention of plaintiffs' son for an approximate four hour period on June 11, 1986. The matter is currently before the court upon defendants' motion for summary judgment. Rule 56, Fed.R. Civ.Proc. The court has concluded that this action should be dismissed. Rule 12(b)(6), Fed.R.Civ.Proc.

The factual background relevant to the present suit began and ended on June 11, 1986, on which date Gregory A. Willard (Greg Willard) was arrested and charged with public intoxication and disorderly conduct by officers Joe Levy and John King of the Myrtle Beach Police Department. At the time of his arrest, Greg Willard was placed in a jail cell for approximately four hours; afterward he was released to his mother, Lorene Willard, and his aunt, Linda Inman.

On June 30, 1987, Greg Willard filed suit against the City of Myrtle Beach and various employees of the city alleging civil rights violations, negligence, assault and battery, and intentional infliction of emotional distress. The case was tried before the Honorable Matthew J. Perry and a jury on February 16–18, 1988. At that time, Judge Perry directed a verdict in favor of defendant Robert Henegar on all causes of action and for the defendant City of Myrtle Beach on the 42 U.S.C. § 1983 (§ 1983) cause of action. After deliberation, the jury returned a verdict for the remaining defendants on all remaining claims. The jury specifically found that defendant Joe Levy did not violate plaintiff Greg Willard's constitutional rights. The court thereafter granted plaintiff's motion for a new trial.

On June 9, 1989, plaintiffs herein, the parents of Greg Willard, filed this action against the City of Myrtle Beach and various employees of the City of Myrtle Beach alleging civil rights violations pursuant to § 1983, negligence, intentional infliction of emotional distress, and conspiracy. In their § 1983 cause of action, plaintiffs assert that the defendants' violated their alleged constitutionally protected liberty in-

terest in the companionship and association of their son. Complaint, paras. 16–18.

In support of their motion for summary judgment, defendants assert that qualified immunity bars the allegations contained in the present complaint. They also contend that defendant City of Myrtle Beach cannot be held liable under § 1983 for the alleged torts or other misconduct of its employees under principles of respondeat superior. Moreover, defendants argue that Greg Willard's parents do not have standing to recover damages pursuant to § 1983 based upon any alleged unlawful misconduct directed toward their adult son, Greg Willard, or, alternatively, that plaintiffs do not have a constitutionally protected liberty interest in the companionship and association of their son cognizable under § 1983. Finally, defendants submit that the doctrine of collateral estoppel precludes relitigation of issues actually litigated and determined in Greg Willard's suit against these same defendants. Specifically, defendants assert that plaintiffs' claims against the City of Myrtle Beach and Robert Henegar are barred by virtue of a directed verdict entered in their favor in Civil Action 87–1730.

In opposition to defendants' motion, plaintiffs first submit that no facts support defendants' bold allegations that they acted with a good faith belief that their actions were lawful. Plaintiffs also assert that defendants are liable under principles of respondeat superior on the pendent claims asserted in the complaint. Plaintiffs further allege that they have suffered injury, and that their injuries were proximately caused by defendants' tortious and deliberate interference with their alleged constitutionally protected liberty interest in the companionship and society of their son, Greg Willard. Consequently, plaintiffs contend they have standing to assert their liberty interest claim under § 1983. Plaintiffs also maintain that collateral estoppel does not bar the present suit because it involves different parties, different causes of action, and different issues than the action previously brought by their son (Civil Action 87–1730).

Although defendants have filed a motion for summary judgment, and have submitted affidavits directed toward the issue of qualified immunity of the individual defendants,[1] the court takes notice that no substantial discovery has yet occurred in the present case. Of course, Rule 56(b), Fed.R.Civ.Proc., provides that a "party against whom a claim ... is asserted ... may, at any time, move with or without supporting affidavits for summary judgment." Courts have nevertheless differed on the standard to be applied where the motion for summary judgment is primarily asserted on the basis of the pleadings alone. *Compare McWhirter Distributing Company, Inc. v. Texaco, Inc.,* 668 F.2d 511 (TECA 1981) *with Blum v. Morgan Guaranty Trust Company of New York,* 709 F.2d 1463 (11th Cir.1983). In any event, because the present summary judgment motion, at least as directed against plaintiffs' § 1983 allegations, was made essentially on the basis of the pleadings alone, it is functionally the same and will be treated by this court as a motion to dismiss for failure to state a claim. Rule 12(b)(6), Fed.R.Civ.Proc.; 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2713, at 594 (2d ed. 1983).

*Cognizability of Plaintiffs' § 1983 Claim*

In actions brought under § 1983, a motion to dismiss under Rule 12(b)(6) should not be granted unless it appears beyond doubt that the plaintiffs can prove no set of facts to support their allegations. *Revene v. Charles County Commissioners,* 882 F.2d 870, 872 (4th Cir.1989). In other words, the complaint must be construed liberally and all doubts must be resolved in favor of the nonmoving party. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Chiles v. Crooks,* 708 F.Supp. 127, 129 (D.S.C.1989).

---

**1.** At the hearing on this matter, the court granted plaintiffs' motion to strike three of defendants' six affidavits, on grounds that the affiants had no personal knowledge of the matters stated within their respective affidavits. Rule 56(e), Fed.R.Civ.Proc. *See Alphin v. United States,* 809 F.2d 236, 239 (4th Cir.), *cert. denied,* 480 U.S. 935, 107 S.Ct. 1578, 94 L.Ed.2d 768 (1987). Plaintiffs' motion to strike was denied in all other respects.

The plaintiffs purport to bring their federal claim under § 1983, which provides:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

Obviously, the threshold inquiry in actions brought pursuant to § 1983 is whether plaintiffs have sufficiently alleged the deprivation of a right secured by the Constitution or laws of the United States. *Harpole v. Arkansas Department of Human Services*, 820 F.2d 923, 925 (8th Cir.1987); *Ortiz v. Burgos*, 807 F.2d 6, 7 (1st Cir.1986).

Apparently, plaintiffs allege that they were deprived of their constitutionally protected right to the companionship and association of their son, Greg Willard, by virtue of defendants' actions in arresting and detaining him for an approximate four hour period on June 11, 1986, during which time defendants allegedly deliberately withheld necessary medical care. Nonetheless, the federal courts are apparently divided on the question of whether parents may recover under § 1983 for the alleged deprivation of their liberty interest in the companionship and association of their child.[2]

Several courts have allowed parents to recover under § 1983 for alleged unconstitutional conduct primarily directed toward their children. *Kelson v. City of Springfield*, 767 F.2d 651 (9th Cir.1985); *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984). Although most of these courts have grounded their result upon fourteenth amendment noneconomic substantive due process, *Bell*, 746 F.2d at 1243–44, *Kelson*, 767 F.2d at 654, at least one court has concluded that a parental liberty interest arises from the first amendment right to freedom of intimate association. *Trujillo v. Board of County Commissioners*, 768 F.2d 1186, 1188–89 (10th Cir.1985). Regardless of any division as to the precise constitutional underpinning which has been used to support a federal civil rights cause of action for the alleged deprivation of a parental liberty interest in familial association, it is nevertheless clear that all cases which have recognized such a cause of action have done so where the plaintiffs have alleged a *permanent, physical* loss of association with their child due to unlawful state action taken under color of state law.[3]

Reluctant to create new substantive rights under the rubric of substantive due process, an equally significant number of courts have refused to create a new constitutional right of action under the same or similar circumstances as those courts which have recognized such claims. Put simply, these courts have either determined that parents or relatives lack standing to assert claims based primarily upon an allegedly unconstitutional deprivation visited upon their child or, alternatively, that the Constitution does not create a cause of action premised entirely upon parental loss of companionship or association with their children due to unlawful action by individual state actors.

In *Dohaish v. Tooley*, 670 F.2d 934 (10th Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982), plaintiff appealed from an order dismissing his action against the district attorney who allegedly discriminated against Saudi Arabians by refusing to prosecute the person who killed plaintiff's son. Rejecting plaintiff's contention that standing existed because of discriminatory actions directed against his son, the court concluded that plaintiff had not suffered any violation of his civil rights whatsoever and, in addition, that he lacked standing to assert claims to contest any

---

**2.** Plaintiffs allege that Greg Willard was seventeen years old at the time he was arrested and detained by the Myrtle Beach Police Department on June 11, 1986.

**3.** The plaintiffs in *Kelson* alleged that the suicide of their fourteen year-old son was caused by defendants' negligence. Both *Bell* and *Trujillo* arose out of the alleged unlawful killing or wrongful death of the respective plaintiffs' children by state actors.

discrimination directed against his son. According to the court:

[t]he major obstacle to the *Dohaish* action, however, is the weaknesses in the suit itself. It is this deficiency which persuades us. It is quite true that there is also a lack of standing. When we say standing, we mean that the § 1983 civil rights action is a personal suit. It does not accrue to a relative, even the father of the deceased.... Because the discrimination which is alleged does not extend to the father, the father cannot bring the suit on such a basis in the federal court, or in the state court either for that matter. In other words, the plaintiff, Abdullah Dohaish, has not suffered a violation of his civil rights whatsoever.

670 F.2d at 936. Accordingly, the court affirmed the district court's dismissal of plaintiff's § 1983 claim.

Subsequently, in *Jackson v. Marsh,* 551 F.Supp. 1091 (D.Colo.1982), parents of a man allegedly unlawfully killed by a police officer sought damages under § 1983 for the permanent deprivation of their alleged constitutional right to the care, companionship, and continued life of their son. Stating that the seminal inquiry was whether there is a constitutionally protected parental right to the continued life of an offspring, the court determined that the Supreme Court "ha[d] never addressed, nor ha[d] it created, a right of a constitutional magnitude which protects individuals from particular acts of governmental agents focusing upon specific family members and potentially affecting the continuity of the intrafamily relationship." *Id.* at 1094. In support of its conclusion, the court stated:

[i]t has been the continuous effort of the Supreme Court to preserve the family unit by protecting it from *governmental* invasions which, by their very nature, either inhibit the creation of the family or abrogate to the government those decisions which must be reserved to family members....

. . . . .

. . . The Court has always sought to eliminate governmental action which is directed against the family in a manner inimicable to the Constitution; however, the focus of those cases was upon governmental, not individual, involvement with the sanctity of the family.

. . . . .

. . . In my judgment, the parental or family right with which [the Supreme Court has recognized] is simply the right to be free from pervasive, broadly-focused governmental activity directed at the family units in the community as a whole or applicable to all families within the purview of the governmental entity....

*Id.* Finally, the court noted the existence of nonconstitutional causes of action to redress unlawful conduct attributable to *individual* state actors—in that case a state wrongful death statute. *Id.* Accordingly, the *Jackson* court rejected the proposition that parents have a protectible interest in the association and companionship of their children cognizable under § 1983. *See also White v. Talboys,* 573 F.Supp. 49 (D.Colo. 1983) (right to the continued life of an offspring is not a cognizable constitutional claim under § 1983).

Other courts have also rejected the contention that a constitutionally protected liberty interest in the association and companionship of children is cognizable under § 1983. In *Ortiz v. Burgos,* 807 F.2d 6 (1st Cir.1986), the mother, stepfather, and siblings of an adult inmate beaten to death by guards brought suit under § 1983 alleging that they had been deprived of their constitutionally protected interest in the companionship of the inmate. The district court granted defendant's motion for summary judgment as to the stepfather's and siblings' claims, but entered judgment for the mother on her personal and derivative claims.

Apparently because defendants did not appeal the judgment entered in favor of the decedent's mother, the narrow question before the First Circuit was whether the stepfather and siblings had a constitutionally protected interest in the association and companionship of their adult son and brother. *Id.* at 7. Noting that the Supreme Court had never considered whether family

members have a liberty interest in the continued life of a relative, the court nonetheless concluded that the Supreme Court had recognized a constitutional liberty interest "for various aspects of family life." *Id.* Specifically, the court reasoned this precedent could generally be divided into two categories of constitutional protections.

The court reasoned that substantive due process had been applied to prevent government interference in certain particularly private decisions—including decisions whether to procreate, *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); whether to school one's children in religious as well as secular matters, *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); and in defining the family with whom one chooses to live, *Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). Commenting on the nature and scope of these rights recognized within the rubric of substantive due process, the court explained that the parameters of the constitutional liberty interest did not protect familial relationships against all state encroachments, but rather were intended to preserve "choice" for family members when confronted with state attempts to make choices for them. The court stated:

> [t]hese substantive due process cases do not hold that family relationships are, in the abstract, protected against all state encroachments, direct or indirect, but only that the state may not interfere with an individual's right to choose how to conduct his or her family affairs. The emphasis in these cases on *choice* suggests that the right is one of preemption; rather than an absolute right to a certain family relationship, family members have the right, when confronted with the state's attempt to make choices for them, to choose for themselves. This case does not involve such a choice.

807 F.2d at 8 (emphasis in original). Additionally, the court stated that the context in which a liberty interest had been recognized concerned "preventing government

interference with the rearing of *young children.*" *Id.* (emphasis added).

The second category of familial constitutional protections recognized by the Supreme Court, according to the *Ortiz* court, concerns the procedural safeguards of the fourteenth amendment liberty interest implicated whenever government directly seeks to change or affect the parent-child relationship in furtherance of a legitimate state interest, including cases involving termination of parental rights, *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); determination of paternity, *Little v. Streater*, 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981); and retention of child custody by an unwed father after their mother's death, *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). 807 F.2d at 8.

Distinguishing the severance of the parent-child relationship incidentally caused by the alleged unlawful actions of individual state actors from the termination of parental rights based on direct discretionary or ministerial government action, the court reasoned that the Supreme Court had never applied the protections of the due process clause to the former. According to the court:

> [b]ut we think it significant that the Supreme Court has protected the parent only when the government directly acts to sever or otherwise affect his or her legal relationship with the child. The Court has never held that governmental action that affects the parental relationship only incidentally—as in this case—is susceptible to challenge for a violation of due process.

*Id.* Acknowledging that other courts had reached a different conclusion, at least where plaintiff was a legal parent of the decedent, the court nevertheless refused to "erect a new substantive right" merely because the relevant permanent deprivation may be "shocking" (*e.g.*, unlawful killing by police), especially in light of the widespread existence of state causes of action available to compensate grieving relatives. *Id.* at 9.

Adopting the *Ortiz* court's distinction between government action directed toward the parent-child relationship and actions by individual state actors which *indirectly* affect the relationship between parent and child, the concept of a constitutionally based damages remedy to compensate relatives was also rejected in *Harpole v. Arkansas Department of Human Services*, 820 F.2d 923 (8th Cir.1987). There, the grandmother of a person harmed after release into his mother's custody by state officials sought to recover for the alleged deprivation of her constitutionally protected liberty interest in familial association with her grandson. Rejecting assertion of plaintiff's § 1983 claim, the court expressed its doubt that the drafters of the fourteenth amendment had intended to protect every conceivable family relationship from government interference—no matter how far removed. *Id.* at 928. Accordingly, the court affirmed the lower court's dismissal of plaintiff's claim under Rule 12(b)(6), Fed.R.Civ.Proc.

■ Although, admittedly, the facts of the instant action are not perfectly analogous with any previous reported federal decision, this court adopts the reasoning of those decisions which have refused to create a new cause of action under the rubric of substantive due process. Alternatively, assuming that a protectible liberty interest cognizable under § 1983 does arise where state actors cause the permanent, physical cessation of the parent-child relationship, it is clear that no such claim has been alleged presently.

■ Like the courts in *Ortiz, Harpole,* and *Jackson,* this court has concluded that the constitutionally protected liberty interest incorporated by the fourteenth amendment due process clause has never been extended by the Supreme Court to encompass deprivations resulting from indirect state action which incidentally affect the family. Certainly the incidental depriva-

tion of the parent-child relationship "should not be actionable simply because the relevant deprivation of life is shocking." *Ortiz,* 807 F.2d at 9. In addition, federal district courts are continuously reminded to avoid encroachment upon matters properly reserved for resolution in state court. *Shamrock Oil & Gas Corporation v. Sheets,* 313 U.S. 100, 108–09, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941); *American Fire & Casualty Company v. Finn,* 341 U.S. 6, 12, 71 S.Ct. 534, 539, 95 L.Ed. 702 (1951); *Davis v. Pak,* 856 F.2d 648, 650 (4th Cir. 1988).

In short, the parent plaintiffs essentially allege that defendants were negligent in their care of Greg Willard during his four hour stay at the Myrtle Beach Police Department on June 11, 1986. "Because invocation of § 1983 may entitle the prevailing attorney to fees under 42 U.S.C. § 1988, transforming a solely state law issue into a § 1983 claim is particularly advantageous." *Beken v. Eaglin,* 711 F.Supp. 860, 870 n. 8 (D.S.C.1989). Rather than encourage derogation from contemporary concepts of federalism and comity toward state courts, *see Murray v. Carrier,* 477 U.S. 478, 487, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986), a federal court is required to "guard against the litigant who frames a pretextual federal issue solely for the purpose of having a state law claim adjudicated in the federal system." *Davis,* 856 F.2d at 651.[4]

Perhaps most important, as noted in *Ortiz* and *Jackson,* the Supreme Court has never recognized any constitutionally protected liberty interest (under the rubric of substantive due process) in parents for the alleged deprivation of their right of companionship and association with their children. Courts which have created a substantive parental right cognizable under § 1983 have relied upon dicta in various Supreme Court decisions—including *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d

---

**4.** Under South Carolina law, which would govern any state law claims arising out of the present allegations, parties asserting negligence against government employees may pursue such claims under the South Carolina Tort Claims

Act, S.C.Code Ann. § 15–78–10, *et seq.* Evidently, plaintiffs have not pursued this state law remedy "in the [state] circuit court ... in which the act or omission occurred." § 15–78–100(b).

599 (1982), *Lehr v. Robertson,* 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983), and *Roberts v. United States Jaycees,* 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). Because the constitutionally protected liberty interest recognized by the Supreme Court arises implicitly from the Bill of Rights as incorporated through the due process clause of the fourteenth amendment, this court is reluctant to erect a wholly new substantive right arising from this liberty interest in the absence of controlling Supreme Court precedent. As noted by the *Harpole* court: "as an appellate court, we should not rely solely on dicta, even Supreme Court dicta, when making decisions with constitutional implications." 820 F.2d at 927. This court will apply that same principle at the district court level.

Plaintiffs apparently assume the existence of a generally applicable constitutionally protected liberty interest inherent in the Constitution, and argue that this liberty interest should extend to create a substantive damages remedy in favor of parents for any negative emotional or psychological effects visited upon their children because of temporary detention by individual state actors. The implications of recognizing such a generalized right to contest indirect state action having an incidental effect upon familial association, however, are far-reaching and cannot be overlooked by this court. As noted by the *Ortiz* court:

> [a] conclusion that governmentally caused termination of, or encroachment on, the parental interest in the continued relationship with a child always is actionable would constitutionalize ajudication in a myriad of situations we think inappropriate for due process scrutiny, including the alleged wrongful prosecution and incarceration of a child or the alleged wrongful discharge of a child from a state job, forcing the child to seek employment in another part of the country. Moreover, the problem of giving definition and limits to a liberty interest in this vast area seems ... exceedingly difficult....

807 F.2d at 9. Accordingly, this court is constrained to conclude that plaintiffs have failed to sufficiently plead a § 1983 cause of action.

■ Alternatively, assuming that a constitutionally protectible parental liberty interest in the continued companionship and association with their children exists within the rubric of substantive due process, it is nevertheless clear that no such liberty interest is implicated by plaintiffs' allegation that their son has suffered permanent emotional and psychological harm by virtue of a brief four hour detention by defendants on June 11, 1986. Significantly, as previously stated, every court which has recognized such a right of action has only done so within the factual context of a permanent, physical separation of parent and child, such as allegations of unlawful killing by individual state actors. Assuming the truth of plaintiffs' allegations, as this court must, it is clear that plaintiffs' do not sufficiently allege a § 1983 claim—as they do not allege the total destruction of the parent-child relationship caused by unlawful action taken under color of state law. *Bell v. City of Milwaukee,* 746 F.2d 1205 (7th Cir.1984). In any event, it is quite evident that there must be a "logical stopping place for such claims," *Trujillo,* 768 F.2d at 1190, *see also Parratt v. Taylor,* 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981). Eventually, if parameters are not placed upon the permissible bounds of § 1983 litigation, it will eventually parallel remedies available under state tort law, which, as in the present case, provide an avenue of relief—albeit in most instances without a fee-entitling statute. *See, e.g.,* S.C.Code Ann. § 15–78–10, *et seq.*

Significantly, providing a § 1983 damages remedy for what are basically allegations of negligence would violate the informed sense of comity which this court is constrained to uphold. *See DeShaney v. Winnebago County Department of Social Services,* — U.S. —, —, 109 S.Ct. 998, 1007, 103 L.Ed.2d 249 (1989) ("Due Process Clause of the Fourteenth Amendment ... does not transform every tort committed by a state actor into a constitutional violation."); *Davis,* 856 F.2d at 651. Perhaps in

recognition of this danger, the Supreme Court has recently begun to limit, or at least slow, the juggernaut of § 1983 litigation. *See Will v. Michigan Department of State Police,* — U.S. ——, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (neither a state nor its officials acting in their official capacities are "persons" for purposes of § 1983); *City of Canton v. Harris,* — U.S. ——, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (municipality can only be held liable under § 1983 where inadequate police training amounts to "deliberate indifference" to the rights of persons with whom the police come into contact). Accordingly, the court is constrained to conclude that plaintiffs' § 1983 allegations must be dismissed. Rule 12(b)(6), Fed.R.Civ.Proc.

Whatever the substantive merits of plaintiffs' § 1983 allegations, the instant action is barred against the individual defendants in their individual capacities due to the doctrine of qualified immunity. In addition, res judicata bars the present § 1983 claim against the defendant City of Myrtle Beach and the individual defendants in their official capacities.

### Qualified Immunity of Individual Defendants

■ Plaintiffs allege in their complaint that their § 1983 claim is directed against the individual defendants in their "official" capacities. Complaint, paras. 4, 8, 15. At the hearing on this matter, counsel for plaintiffs initially conceded that the present defendants were being sued in their official capacities. During the court's discussion of *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), at which time the court indicated that a suit against the individual defendants in their official capacities was in essence a suit against the defendant City of Myrtle Beach, *Will,* 109 S.Ct. at 2311, and that punitives were therefore not recoverable, counsel for plaintiffs abruptly *altered her position* and decided that the present suit was also directed against the individual defendants in their individual capacities. When asked to substantiate her claim, counsel for plaintiffs directed the court's attention to paragraph 22 of the Complaint, which provides in pertinent part:

> 22. ... defendants King, Davis and Captain Henegar acted individually and in concert with [defendant] Levy to deny Plaintiffs all of their above rights.

Although it is doubtful plaintiffs' allegations sufficiently plead a § 1983 cause of action against the individual defendants in their individual capacities, it is nonetheless clear that the individual defendants are immune from suit under principles of qualified immunity.

It is universally recognized that the doctrine of qualified immunity generally bars suit against a municipal officer for an allegedly unlawful action if his or her actions were objectively reasonable in light of legal principles "clearly established" at the time it was taken. *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Allen v. Lowder,* 875 F.2d 82, 85 (4th Cir.1989); *Bright v. McClure,* 865 F.2d 623, 625 (4th Cir.1989). Significantly, the Supreme Court has repeatedly emphasized that mere allegations of malice do not destroy qualified immunity and in essence "subject government officials either to the cost of trial or to the burdens of broad-reaching discovery." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. *See Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) (allegation of malice not sufficient to defeat immunity if defendant acted in objectively reasonable manner). Furthermore, to ensure that *Harlow* immunity is not "transformed from a guarantee of immunity into a rule of pleading," *Anderson,* 483 U.S. at 639, 107 S.Ct. at 3039, the Supreme Court has indicated that immunity should be rejected only where "[t]he *contours of the right* [to which plaintiff claims entitlement to or infringement of are] *sufficiently clear* that a reasonable official would understand that what he [or she] is doing violates that right." *Id.* at 640, 107 S.Ct. at 3039 (emphasis added).

Plaintiffs allege that "defendants' actions deprived plaintiffs of their First and Fourteenth Amendment rights to associate with, to enjoy the company of, to have the familial association with, and communication with, Greg Willard." Complaint, para. 18. Nevertheless, the Supreme Court has never created a parental right to the association and companionship of their children cognizable under § 1983. *Ortiz*, 807 F.2d at 7 ("[a]fter careful consideration, we conclude that this precedent establishing constitutional protection for various aspects of family life falls short of establishing a liberty interest in the circumstances of this case."); *Jackson*, 551 F.Supp. at 1094 ("Supreme Court has never addressed, nor has it created, a right of a constitutional magnitude which protects individuals from particular acts of government agents focusing upon specific family members and potentially affecting the continuity of the intrafamily relationship").

Indeed, even courts which have recognized a substantive parental right to the companionship and association of their children have disagreed as to its constitutional underpinnings, *see supra* p. 400, and have normally required the "child's death" as a prerequisite to suit. *See, e.g., Bell*, 746 F.2d at 1244. Whereas the Tenth Circuit has recognized a cognizable cause of action within this context in favor of both parents and siblings—at least where plaintiff alleges an "intent to interfere" on the part of the defendant, *Trujillo*, 768 F.2d at 1190, the Seventh Circuit has recognized a substantive right in favor of the parents but not the siblings of children adversely impacted by allegedly unlawful state action. *Bell*, 746 F.2d at 1247. Although these same courts concede that a "logical stopping place" must be found for such claims, *Bell*, 746 F.2d at 1205, *Trujillo*, 768 F.2d at 1190, the far-reaching disagreement as to the parameters of this judicially-created right of action merely reaffirms the dangers inherent to judicial creation of such remedies. *Ortiz*, 807 F.2d at 9; *Harpole*, 820 F.2d at 928. Significantly, this court takes notice that the Fourth Circuit Court of Appeals has apparently never addressed this precise issue. In any event,

the wholly imprecise "contours" of any alleged parental right to the companionship and association of their children cognizable under § 1983 constrains this court to conclude that the individual defendants are entitled to qualified immunity under the facts and circumstances of this case. *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039.

### Res Judicata

■ Correspondingly, plaintiffs' allegations directed against the defendant City of Myrtle Beach and the individual defendants in their official capacities are also barred by the doctrine of res judicata. Defendants argue that the closely related, yet distinct, doctrine of collateral estoppel bars the present action. Plaintiffs, on the other hand, assert that the doctrine of collateral estoppel does not bar the present suit because this case involves different parties, different causes of action, and different issues.

The court has concluded, however, that res judicata, or "claim preclusion," is the procedural bar which precludes the instant § 1983 claim. A close question is presented as to whether res judicata bars the present suit. Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action...." *Kremer v. Chemical Construction Corporation*, 456 U.S. 461, 466 n. 6, 102 S.Ct. 1883, 1890 n. 6, 72 L.Ed.2d 262 (1982); *United States v. Mumford*, 630 F.2d 1023, 1027 (4th Cir.1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 238 (1981). The doctrine of res judicata is premised upon the need for finality, considerations of judicial economy, and certainty in legal relations. *Id. See Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

First, res judicata does not attach unless the previous order constituted a final adjudication of the merits. *F.T.C. v. Food Town Stores Inc.*, 547 F.2d 247, 249 (4th Cir.1977). Significantly, a verdict directed in favor of certain defendants entered under Rule 54(b), Fed.R.Civ.Proc., constitutes

a final judgment for purposes of res judicata. *Simon v. M/V Hialeah,* 431 F.2d 867, 868–69 (5th Cir.1970); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4432, at 300–01, § 4445, at 393 (2d ed. 1983). Moreover, it is well established that a suit against an individual in his or her official capacity is considered a suit against the municipal employer itself. *Will,* 109 S.Ct. at 2311; *Hughes v. Blankenship,* 672 F.2d 403, 406 (4th Cir. 1982); *Jensen v. Conrad,* 570 F.Supp. 91, 100 n. 2 (D.S.C.1983), *aff'd,* 747 F.2d 185 (4th Cir.1984), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1754, 84 L.Ed.2d 818 (1985).

In a § 1983 action filed by plaintiff's son, Greg Willard (Civil Action No. 87–1730), which is still pending before this court, a directed verdict was entered by Judge Perry in favor of defendant City of Myrtle Beach on Greg Willard's § 1983 cause of action and in favor of defendant Robert Henegar on all causes of action. Consequently, this verdict constitutes a final judgment under principles of res judicata.

Second, res judicata does not attach unless the previous action involved the same parties or their privies. *NLRB v. United Technologies Corporation,* 706 F.2d 1254, 1259 (2d Cir.1983). According to Wright & Miller:

> [c]laims derived from injury to another family member provide the most common departures from the basic rule that preclusion does not embrace nonparty family members. By far the most common example arises from claims by a spouse for loss of consortium. The traditional rule has been that even after the injured spouse has lost an action to recover for personal injuries, the other spouse may maintain an action for loss of consortium free from any claim or issue preclusion. Modern decisions, however, have increasingly adopted the view that loss by the

injured spouse establishes issue preclusion in a subsequent action by the other for loss of consortium....

· · · · ·

> [a]lthough the questions arise less often, rules that are developed for derivative or dependent claims between spouses should apply as well between parents and children....

18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4459, at 525–26 (2d ed. 1983).[5] Although plaintiffs argue that their claim for the alleged deprivation of their right to association and companionship with Greg Willard stands independent of their son's altercation and detention by the Myrtle Beach Police Department, their allegations, for purposes of res judicata, are most analogous to spousal claims for loss of consortium. *See Id.* ("[i]f society continues to evolve toward new forms of enduring relationships and they are assimilated into substantive rights of recovery, moreover, the same preclusion rules should be extended as apply to more traditional relationships.") (footnote omitted). In addition, the need to prevent piecemeal litigation in situations where, as here, the primary conduct is directed against one individual—yet his or her relatives bring additional lawsuits which essentially derive from the primary conduct itself—the interests of repose, finality of judgment, economy of judicial time, and certainty in legal relations, *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948), are best served by application of a preclusive bar to subsequent suits arising out of the identical facts and circumstances. *See Brown, supra; Mumford, supra.* Accordingly, the court is constrained to conclude that the present plaintiffs, as the parents of Greg Willard, are the privies of Greg Willard under res judicata principles.

---

5. It is well established, of course, that the scope and effect of a federal court judgment is a federal law determination which is not subject to differing state rules. *See, e.g., Jones v. Beasley,* 476 F.Supp. 116, 118 (M.D.Ga.1979). The modern view of preclusion within this context is codified in the *Restatement (Second) of Judgments* § 48(2) (1981), which provides:

> [w]hen a person with a family relationship to one suffering personal injury has a claim for loss to himself resulting from the injury, the determination of issues in an action by the injured person to recover for his injuries is preclusive against the family member, unless the judgment was based on a defense that is unavailable against the family member in the second action.

The final requirement to application of res judicata as a procedural bar to subsequent suits necessitates that the second suit involve "the same cause of action on all matters that were part of the first suit and all issues that could have been litigated." *Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499, 1501 (11th Cir.1984). In other words, res judicata precludes relitigation "of claims 'with respect to all or any part of the transaction, or series of transactions, out of which the [previous] action arose.'" *Harnett v. Billman*, 800 F.2d 1308, 1314 (4th Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 763 (1987) (quoting *Restatement (Second) of Judgments* § 24(2) (1982)). *See Nevada v. United States*, 463 U.S. 110, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983); *Dowd v. Society of St. Columbans*, 861 F.2d 761, 763 (1st Cir. 1988); *Ocean Drilling & Exploration Co. v. Mont Boat Rental Services, Inc.*, 799 F.2d 213, 217 (5th Cir.1986). In the present case it is clear that any parental claims arise out of the *same transaction* which allegedly gives rise to Greg Willard's claims against the defendants. Specifically, in both instances the focus is on defendants' detention of Greg Willard on June 11, 1986. Thus it is clear that any claims asserted by the present plaintiffs arise out of the *same* transaction that is the subject of Greg Willard's action (Civil Action 87–1730) against these same defendants. Accordingly, res judicata bars assertion of the present § 1983 cause of action against the municipal officers in their official capacities and against the defendant City of Myrtle Beach.[6]

Although disposition of plaintiffs' § 1983 claim does not automatically resolve plaintiffs' pendent claims, it is well settled that pendent state claims with no independent federal jurisdictional basis are normally dismissed without prejudice where the federal claims are dismissed before trial.

*United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). As stated by the *Gibbs* Court:

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial ... the state claims should be dismissed as well.

*Id.* at 726–27, 86 S.Ct. at 1139–40 (footnotes omitted) (emphasis added).

■ Plaintiffs have certified to the court that the statute of limitations applicable to several of their pendent claims was about to expire at the time the present complaint was filed. But counsel for plaintiffs filed a § 1983 claim of questionable cognizability—as no reported federal decision supports the recognition of the purported § 1983 cause of action under the present facts and circumstances. In addition, counsel for plaintiffs could have "proceeded in the state courts by initiating an action there while [their] case remained *sub judice* in the federal courts," *Federman v. Empire Fire and Marine Ins. Co.*, 597 F.2d 798, 809 n. 18 (2d Cir.1979), which is a recognized practice within the District of South Carolina where the purported basis for federal jurisdiction is questionable. It should also be noted that the South Carolina Tort Claims Act, S.C.Code Ann. § 15–78–10, *et seq.*, under which plaintiffs' pendent claims would presumably arise, did not become effective until July 1, 1986. The recency of this statute alone indicates that the contours of liability for acts of municipal employees may be somewhat unsettled under State law. This factor also militates in favor of dismissal of plaintiffs' pendent claims. *See, e.g., Robison v. Via*, 821 F.2d 913, 925–26 (2d Cir.1987). Accordingly, plaintiffs' pendent claims are dismissed without prejudice.[7]

---

**6.** Indeed, the possibility of a never-ending chain of § 1983 claims emanating from a child's misfortune at the hands of government officials (brought initially by parents, then siblings, and thereafter by more distant relatives—none of whom are *ordinarily* thought of as in "privity" with the child under traditional res judicata

principles), reinforces the need to apply res judicata as a procedural bar to successive suits arising out of the same transaction.

**7.** Because municipal liability under § 1983 cannot be premised on principles of respondeat superior, *Monell v. Department of Social Servic-*

Based on the foregoing reasoning and cited authorities, the court is constrained to dismiss plaintiffs' § 1983 claim for failure to state a claim upon which relief can be granted. Rule 12(b)(6), Fed.R.Civ.Proc. Plaintiffs' state law pendent claims are dismissed without prejudice.[8]

IT IS SO ORDERED.

---

*es,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), *Simons v. Montgomery County Police Officers,* 762 F.2d 30 (4th Cir.1985), and because plaintiffs' pendent claims have been dismissed without prejudice, plaintiffs' arguments that respondeat superior liability is available under State law is not relevant to the court's disposition of this case.

**8.** Obviously, defendants' motion to strike punitives is mooted by the court's disposition of this matter.