Ernest C. BAYNARD, III,
et al., Plaintiffs,

v.

Craig J. LAWSON, et al., Defendants.

No. Civ.A. 99–1111–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 7, 1999.

---

Court grants Defendant's Motion to Dismiss.

### I. Facts and Background

On a motion to dismiss, the Court must view the facts in the light most favorable to the nonmoving party. Essentially, the Complaint alleges that a teacher molested a child for seven years in and out of school and the school superintendent had reason to know of a risk of harm and did not warn the parents of that risk. Read in the light most favorable to Plaintiffs, the facts are as follows:

In September 1990, Plaintiffs Ernest C. Baynard, III and Wendy Fee Baynard's son, then age eleven, entered the sixth grade at Charles Barrett Elementary School in Alexandria, Virginia. Defendant Craig Lawson was his teacher. Mr. Lawson was employed by the Alexandria City School Board ("ACSB"). In March 1990, several months prior to Plaintiffs' son's admission, "A," a former student of Mr. Lawson from the early 1970s, went to the principal, Ms. Katherine Malone ("Principal Malone"), and accused Mr. Lawson of molesting him some fifteen years ago. Several other former students also came forward with allegations of sexual abuse against Mr. Lawson.

By October 1990, Mr. Lawson was sexually molesting Plaintiffs' son. In addition, Mr. Lawson also gave Plaintiffs' son illegal drugs and alcoholic beverages. Several students, staff, and faculty noticed inappropriate behavior between Mr. Lawson and Plaintiffs' son. In November 1990, Principal Malone met with Mr. Lawson and told him that she had observed Plaintiffs' son "constantly hanging" on Mr. Lawson and that she considered this behavior inappropriate. She also advised Mr. Lawson to talk to Plaintiffs' son and limit the amount of physical contact between them.

In January 1991, Principal Malone and ACSB Administrator Maxine Wood notified the ACSB of the allegations of sexual abuse against Mr. Lawson and the ACSB

---

Francis J. Prior, Jr., Fairfax, Virginia, J. Thomas Burch, Jr., Washington, D.C., for plaintiffs.

Tina M. Maiolo, Washington, D.C., for defendants.

### MEMORANDUM OPINION AND ORDER

LEE, District Judge.

THIS MATTER is before the Court on Defendant Paul Masem's ("Superintendent") Motion to Dismiss. The issues presented on this motion to dismiss the 42 U.S.C. § 1983 action are: (1) whether a parent has a constitutional right in child rearing to protect their child from physical harm; and (2) whether Defendant Superintendent is liable under § 1983 for failing to warn the parents that their child's teacher was accused of sexually molesting a student in the past and suspected of inappropriate conduct with their child. This action arises out of Defendant Craig Lawson's ("Mr. Lawson") sexual abuse of Plaintiffs Ernest C. Baynard, III and Wendy Fee Baynard's ("Plaintiffs") son while he was Mr. Lawson's student. Plaintiffs submit that Defendant Superintendent deprived them of their constitutionally protected right in child rearing. The Superintendent argues that the Constitution and § 1983 protect only injured parties and that the parents have no separate cause of action.

Upon consideration of the matter, the Court finds that the parents' fundamental liberty interest under the Constitution includes the right to protect their child and to direct child rearing activities free from harmful state action. Under the circumstances of this case, the Court holds that the child is the party who was directly injured by state action and that § 1983 does not grant the parents a separate cause of action for incidental injury to the parent-child relationship. Therefore, the

commenced an investigation. Plaintiffs were never informed about nor interviewed as part of the investigation. Between January and June of 1991, Defendant Paul Masem, the then-superintendent of Alexandria public schools, instructed Principal Malone that Mr. Lawson was not to have any after-school contact with the students. Despite this directive, Mr. Lawson continued to have contact with Plaintiffs' son in full view of the staff without intervention by anyone at the school. Plaintiffs were never informed that Mr. Lawson had been accused of molesting a student in the past or was a potential risk of harm to their son.

In June 1991, Mr. Lawson voluntarily left his teaching position with the school system. The ACSB took no action against him. Subsequently, Mr. Lawson was employed as head counselor of the Art Monk Football Camp, an overnight summer camp. During the summer of 1991, Plaintiffs' son attended this camp and was molested by Mr. Lawson. Mr. Lawson's sexual abuse of Plaintiffs' son continued for the next seven years.

Mr. Lawson was later arrested and prosecuted for child sex abuse. He pled guilty to four counts of forcible sodomy, four counts of aggravated sexual battery, and three counts of taking indecent liberties with a child, including acts committed against Plaintiffs' son. In November 1998, Mr. Lawson was sentenced to life in prison with all but thirty years suspended.

Plaintiffs filed this lawsuit to recover for damages to their parental rights.[1] Plaintiffs' son filed a separate action.[2] *See Jackson Baynard v. Craig J. Lawson, et al.,* No. 99–621 (E.D.Va. filed April 30, 1999). In Plaintiffs' action, Defendant Superintendent was named in Counts I through IV. Count I is pled as a violation of 42 U.S.C. § 1983 and alleges a destruction of parental rights caused by Defendant Superintendent's failure to notify, and in fact concealment of, the sexual abuse of their son by Mr. Lawson. Plaintiffs allege that Defendant Superintendent's failure to warn them that an accused sexual predator was in their child's classroom violated their constitutional parental right to raise their son in a manner consistent with their religious belief and in an environment free of illegal drugs and sexual abuse. Counts II, III, and IV are common law fraud claims. Defendant Superintendent moves to dismiss Plaintiffs' § 1983 and fraud claims on the grounds of failure to state a claim, statute of limitations, and the doctrine of sovereign immunity.

This matter has been fully briefed and was set for oral argument on November 12, 1999. Defendant Superintendent's counsel failed to appear for oral argument. However, this Court heard argument from Plaintiffs and considered both parties' briefs. In open court, Plaintiffs stated their intention to file a motion to voluntarily dismiss the common law counts. Thus, it is no longer necessary for the Court to address Defendant's statute of limitations, doctrine of sovereign immunity, or Rule 12(b)(6) arguments as related to the fraud claims. As stated, the issues presented are: 1) whether Plaintiffs' claim that Defendant Superintendent violated their parental right to shape and direct the life of their son is cognizable under § 1983; and 2) if the claim is cognizable, whether Plaintiffs state a claim under § 1983 on the theory of supervisory liability. The Court will address the first issue.

## II. Standard of Review

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint should be dismissed if the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In consider-

---

1. Plaintiffs sued defendants Masem, Lawson, ACSB, Malone, Wood, and several others.

2. This Court previously denied Defendant Superintendent's motion to dismiss the case filed by Plaintiffs' son. *See Order,* August 13, 1999 (Lee, J.).

ing the motion, the factual allegations of the complaint must be accepted as true, and the complaint and its allegations considered in the light most favorable to the nonmoving party. *See Mylan Laboratories Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993).

### III. Section 1983 and the Parent–Child Relationship

This 42 U.S.C. § 1983 suit is brought by the parents in their own right asserting that the conduct of Defendant Superintendent deprived them of their right to due process secured by the United States Constitution under the color of state law. The child victim has filed a separate claim which is currently pending in this Court. The parents are understandably grievously affected by the physical and emotional injury inflicted upon their son by his teacher. The inquiry before the Court requires deliberate legal analysis of complex relationships between a family and the law.

Title 42 section 1983 provides that

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C.A. § 1983 (West Supp.1999). To establish a claim under § 1983, a plaintiff must allege that (1) the conduct complained of was committed by a person acting under the color of state law, and (2) that such conduct deprived a person of rights, privileges, and immunities secured by the Constitution. *See Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). In this case, Plaintiffs allege that Defendant Superintendent, acting under the color of state law, deprived them of their constitutional rights as parents to protect their child and to raise him in a safe environment. Further-

more, Plaintiffs allege that Defendant Superintendent's failure to warn them about complaints against their child's teacher exposed their son to the unreasonable risk of a sexual assault by the accused teacher. Plaintiffs claim that their parental relationship with their son was effectively destroyed as a result of the sexual abuse he sustained and the action and inaction of the defendants in general, and Defendant Superintendent in particular as related to this motion. Plaintiffs allege that the parental right to maintain the parent-child relationship is guaranteed under the Constitution. The Complaint further alleges that Defendant Superintendent's "cover-up" of the allegations against Mr. Lawson violated Plaintiffs' parental right to raise their son in a manner consistent with their religious belief and in an environment free of illegal drugs and sexual abuse.

Essentially, Defendant denies that the parents state a claim that is protected under the Fourteenth Amendment and cognizable under § 1983. Defendant argues that Plaintiffs fail to state a claim under § 1983 because the United States Court of Appeals for the Fourth Circuit has not recognized a substantive due process claim for an alleged victim's family members where the government action did not cause them direct injury and only affects the family incidentally. *See Shaw v. Stroud*, 13 F.3d 791, 805 (4th Cir.1994); *Rucker v. Harford County*, 946 F.2d 278, 283 (4th Cir.1991); *see also Willard v. City of Myrtle Beach*, 728 F.Supp. 397, 403 (D.S.C.1989). Defendant Superintendent contends that Plaintiffs allege that Defendant's action resulted in a deprivation of their parental rights and the companionship and association of their son. Thus, Defendant submits that Plaintiffs' claim is one for incidental injury and is not actionable under § 1983.

On the other hand, Plaintiffs contend that their parental right to shape and direct the life of their child is a fundamental liberty protected by the Constitution. *See Planned Parenthood of the Blue Ridge v.*

*Camblos,* 155 F.3d 352, 368 (4th Cir.1998); *see also Estate of Bailey by Oare v. County of York,* 768 F.2d 503, 509 (3rd Cir.1985) (stating that a parent whose child has died as a result of unlawful state action may maintain a § 1983 action for deprivation of liberty) (*overruling* on unrelated grounds recognized in *Philadelphia Police and Fire Association for Handicapped Children, Inc. v. City of Philadelphia,* 874 F.2d 156, 167 (3rd Cir.1989)). Plaintiffs also attempted to distinguish those cases relied upon by Defendant, arguing that the constitutional right of parents to protect their children from harm by the state did not arise in *Shaw* and *Willard. See Shaw,* 13 F.3d at 796; *Willard,* 728 F.Supp. at 398. Plaintiffs submit that *Shaw* involved a suit for the death of a husband/father at the hands of police. 13 F.3d at 796. *Willard* involved an adult son who had been arrested and detained by the police. 728 F.Supp. at 398.

As an action under § 1983 must be grounded in the United States Constitution or other laws, it is essential to ascertain what right anchors Plaintiffs' claim. The Court must therefore determine whether the parent-child relationship is protected under the Constitution.

### A. Constitutional Protection of the Parent–Child Relationship

■ The parental right to shape and direct the life of the child is a fundamental liberty protected by the Constitution. *See Planned Parenthood of the Blue Ridge v. Camblos,* 155 F.3d 352, 369 (4th Cir.1998). In *Planned Parenthood,* the Court discussed parents' fundamental liberty interest in the parent-child relationship in the context of Virginia's Parental Notice Act regarding notice to parents if a minor seeks an abortion. Relying on several United States Supreme Court cases, the Fourth Circuit reasoned that the parental right to shape and direct the life of one's child during the child's minority is grounded in the Constitution. *See, e.g., Hodgson v. Minnesota,* 497 U.S. 417, 484, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990); *Bellotti v.*

*Baird,* 443 U.S. 622, 637, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979).

> The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed essential, basic civil rights of man.... [I]t is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.

*Hodgson,* 497 U.S. at 447, 110 S.Ct. 2926 (op. of Stevens, J.) (internal quotations and citations omitted). The parental interest is at its zenith when the issue involves the child's physical well-being and spiritual, moral, and emotional development. *See Planned Parenthood,* 155 F.3d at 368 (*citing Bellotti,* 443 U.S. at 637–38, 640, 99 S.Ct. 3035 (op. of Powell, J.)).

The Supreme Court has further stated that

> The Court has recognized that the freedom to enter into and carry on certain intimate or private relationships is a fundamental element of liberty protected by the Bill of Rights.... The intimate relationships to which we have accorded constitutional protection include marriage ... the begetting and bearing of children ... child rearing and education....

*Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte,* 481 U.S. 537, 545, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987).

Thus, Plaintiffs correctly assert that the Constitution protects the parental right to shape and direct the life of their child. However, the Court must still determine whether Plaintiffs have sufficiently alleged that Defendant Superintendent violated their parental right in order to state a claim under § 1983.

### B. Limitation of the Constitutional Protection of the Parent–Child Relationship

The parental right to direct a child's upbringing has limits and every state in-

trusion into the parent-child relationship is not actionable. The Fourth Circuit has recognized that the Fourteenth Amendment claim for deprivations resulting from state action does not include all forms of injury. *See Shaw v. Stroud,* 13 F.3d 791, 805 (4th Cir.1994). While recognizing a split in the circuits, the Court also noted that the Supreme Court has never held that the protections of substantive due process extend to claims based on governmental action which affects the family relationship only *incidentally. See id.* In *Shaw,* the plaintiffs were a widow and her children whose husband/father was killed during an arrest. *See id.* at 794. The plaintiffs sued the state trooper asserting a § 1983 claim. *See id.* at 797. The Fourth Circuit held that the plaintiffs' claim for the loss of love and support of their husband/father was not actionable under § 1983. *See id.* at 805.

Plaintiffs seek to distinguish their claim from *Shaw.* In *Shaw,* the plaintiffs were suing for the loss of the love and support of their husband/father. In the present case, Plaintiffs frame their claim as a deprivation of their parental rights in reference to their then-minor child. Although the Complaint refers to the loss of companionship and association of Plaintiffs' son, Plaintiffs' claims are not framed solely as loss of love and support.[3] *See Complaint,* ¶ 83. The Complaint specifically alleges deprivation of their parental rights. *See id.* ¶¶ 83, 86. However, it was not the framing of the claim nor the age and relationship of the family member which seemed most important to the Court's analysis in *Shaw.* The Court focused on the nature of the injury.

The Fourth Circuit noted that other circuits have recognized two versions of a substantive due process claim for family members to recover under § 1983. *See Shaw,* 13 F.3d at 804. One, some circuits require the plaintiff to show that state action directly injured the relationship itself. *See id. (citing Ortiz v. Burgos,* 807 F.2d 6, 7–9 (1st Cir.1986) (holding that the stepfather and siblings of an adult inmate who was allegedly beaten to death by guards could not recover under § 1983 where the government action was not directly aimed at the familial relationship)). Two, other circuits allow a plaintiff to establish a violation by demonstrating conduct which, although unrelated to the relationship, incidentally injures the relationship. *See id; see also Kelson v. City of Springfield,* 767 F.2d 651, 656 (9th Cir.1985) (holding that the parents possessed a constitutionally protected liberty interest in the companionship of their child where they filed a § 1983 claim arising out of the suicide of their son while he was at school). The Fourth Circuit also acknowledged that a third category of courts refused to recognize a substantive due process claim arising from the deprivation of the love and support of a family member. *See Shaw,* 13 F.3d at 804; *see also Willard v. City of Myrtle Beach,* 728 F.Supp. 397 (D.S.C. 1989) (holding that parents of an adult arrestee could not maintain a § 1983 action for loss of companionship and association).

Therefore, the Fourth Circuit fully acknowledged the variations in the law: recognizing the claim or not recognizing the claim, and requiring direct injury or requiring incidental injury to the relationship itself. The Fourth Circuit declined to recognize a claim involving government action that affected the family only incidentally. *See Shaw,* 13 F.3d at 805. Thus, in the present case, the question is whether the harm that Plaintiffs allege—deprivation of their parental rights—amounts to a direct injury, which is cognizable, or an *incidental* injury, which is not cognizable.

The Fourth Circuit has not defined what constitutes direct injury. However, the First Circuit has provided some guidance.

---

**3.** Any claim for loss of love and support is not cognizable in the Fourth Circuit. *See Shaw,*

13 F.3d at 804.

Direct injury is that which is directly aimed at the parent-child relationship. *See Pittsley v. Warish,* 927 F.2d 3, 8 (1st Cir.1991) (holding that a mother and her two children failed to establish a § 1983 claim where there was no evidence that threats made to the mother were directly aimed at the relationship between parent and child). The aggrieved person under § 1983 is the target of state action which deprives the victim of their personal rights under the color of state law. *See id.* at 9; *Ortiz,* 807 F.2d at 8. Only the person toward whom the state action was directed may maintain a § 1983 action. *See Pittsley,* 927 F.2d at 9.

■ Incidental injury is that injury where the offending conduct is directed toward the children themselves and not the parent-child relationship. *See Divergilio v. Skiba,* 919 F.Supp. 265 (E.D.Mich. 1996). In *Divergilio,* the plaintiff parents brought a § 1983 claim against a gym teacher who had allegedly exposed himself to his elementary school students. *See id.* at 266. Essentially, the plaintiff parents alleged that the parent-child relationship had been diminished by the emotional and mental distress resulting from the defendant's action toward their children. Furthermore, they alleged that the defendant had deprived them of their constitutional right to preserve and maintain the physical safety and mental well-being of their children and the integrity of their family. *See id.* at 267. The district court recognized that the plaintiff parents had standing to assert a claim for deprivation in their own liberty interest in the creation and maintenance of the parent-child relationship. *See id.* However, the district court held that the plaintiff parents failed to prove that the governmental action was directed toward a protected aspect of the relationship and that the injury was not merely incidental. *See id.* at 269.

In this case, Plaintiffs allege that Defendant Superintendent deprived them of their constitutional right as parents to protect their son from harm caused by the state's action. The Complaint identifies Defendant Superintendent's acts and omissions as the state action. Plaintiffs make several assertions which must be accepted as true: Plaintiffs allege that Defendant Superintendent knew that a teacher, Mr. Lawson, was accused of sexual abuse in the past and that Mr. Lawson continued to teach their child in a public school under Defendant Superintendent's direction. They allege that Defendant Superintendent was well aware of the unreasonable risk of harm an accused child molesting teacher posed to students, and yet, he decided not to inform Plaintiffs of the risk to their child—even though that teacher was spending excessive time with their son. Furthermore, Plaintiffs submit that Defendant Superintendent directed Mr. Lawson to refrain from contact with children after school hours, but then, failed to monitor Mr. Lawson's behavior. However, these allegations do not allege any direct physical injury to their person inflicted as a result of Defendant Superintendent's actions. Nor do Plaintiffs allege that Defendant Superintendent attempted to legally sever or legally affect the parent-child relationship.

We now know that the worst of any parent's fears occurred. Mr. Lawson molested Plaintiffs' son repeatedly for seven years in and out of school. Understandably, Plaintiffs are pained by these events and submit that the Constitution ensures their separate right of action for the grievous injury that they have suffered to their parent-child relationship. They submit, and the Court acknowledges, things "can never be the same." Thus, it is reasonable to argue that the harm to the parent-child relationship is irreversible and deserves recognition under § 1983. *See Ortiz,* 807 F.2d at 8. However, the Supreme Court has protected the parent only when the "government directly acts to sever or otherwise affect his or her legal relationship with a child." *Id.* The Court has never held that governmental action that affects the parent-child relationship only incidentally can be challenged under the Due Process Clause of the Fourteenth Amend-

ment. *See id.; see also Shaw,* 13 F.3d at 805. Thus, notwithstanding Plaintiffs' personal tragedy, the Court must determine under the law whether these parents may maintain an action, separate from their son's own right of action, under 42 U.S.C. § 1983.

■ As stated above, the characterization of the injury as direct or incidental is determined by identifying the target of the offending conduct by the state actor. Surely, the parents have been injured in fact here, yet under the law, the Court must find that Defendant Superintendent's actions and those of Mr. Lawson were directed at the child, and not the parents. Plaintiffs do not allege any conduct which was intentionally nor directly aimed at depriving them of or diminishing their relationship with their son. Plaintiffs have not alleged that they suffered a permanent, physical loss of association. While Defendant's failure to notify Plaintiffs of the allegations enabled the abuse of Plaintiffs' son to continue, any constitutional violation was committed against the son. Thus, while Plaintiffs' injury is not insignificant, their alleged injury was incidental to the injury suffered by their son. If a claim pursued by the widow and minor children of a citizen allegedly shot and killed in violation of the Constitution by a state trooper is not cognizable under § 1983, then the parents' claim here is not cognizable. *See Shaw,* 13 F.3d at 804–05. Similar to *Shaw,* Plaintiffs' claim is for injury incidental to Defendant Superintendent's alleged violation of their child's constitutional rights.

The child still has a claim under 42 U.S.C. § 1983 for his direct injury. However, the Court holds that Plaintiffs fail to state an actionable claim for deprivation of their parental rights under the Constitution and § 1983. There is no separate parental cause of action under § 1983 for "the incidental diminution in the quality of the protected [parental] relationship." *Divergilio,* 919 F.Supp. at 269. By dismissing Plaintiffs claim, the Court does not minimize the harm that their family has

suffered nor belittle the fundamental liberty interest in the parent-child relationship. The Court's holding simply indicates that, in light of the Supreme Court and Fourth Circuit precedent, it would be inappropriate to recognize Plaintiffs' claim for injury to the parent-child relationship on the facts of this case.

The Court will not address the remaining issues presented by the motions as they are moot. Defendant Paul Masem's Motion to Dismiss is GRANTED and the case is dismissed.