916 F.2d 713
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Edward M. SOLON, Plaintiff-Appellant,
v.
Jerry ELLSWORTH, et al., Defendants-Appellees.
 No. 89-2317.
 United States Court of Appeals, Sixth Circuit.
 Oct. 22, 1990.
 
 Before KEITH and RALPH B. GUY, Jr., Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Edward M. Solon, Jr. ("Solon") appeals from the district court's October 31, 1989 order granting summary judgment in favor of Trooper Jerry Ellsworth ("Trooper Ellsworth"), Trooper Brad Breedvelt ("Trooper Breedvelt") and Lieutenant Matthew Hogan ("Lt. Hogan") (collectively "defendants"). For the reasons set forth below, we AFFIRM.
 
 I.
 
 2
 For several days in January 1986, Solon engaged in threatening behavior because of a mental disorder caused by an imbalance of Dopamine in his brain.[1] He heard voices which told him to commit unusual acts, such as pointing a gun at his neighbors for no reason.
 
 
 3
 On January 11, 1986, Oxford Police Chief Frank Huelsenbeck ("Chief Huelsenbeck") contacted Lt. Hogan of the Michigan State Police Pontiac Post and requested the State Emergency Support Team to serve on Solon an arrest warrant for felonious assault. Chief Huelsenbeck advised Lt. Hogan that Solon's propensity for violence and potential armament presented a dangerous situation. Chief Huelsenbeck recounted that three days earlier, Solon had barricaded himself in his parents' home for six hours. During that incident, Oakland County SWAT team members eventually abandoned their efforts to capture and disarm Solon.
 
 
 4
 On January 12, 1986, Solon, who had access to a substantial quantity of weaponry and ammunition, was still barricaded in his parents' home. At 8:00 a.m., six members of the Emergency Support Team arrived at the Pontiac Post for a briefing. Sergeant Christopher Lanfear, a negotiator from Madison Heights Crime Lab, was also present. The officers next moved to the Oxford Police Department where Chief Huelsenbeck met and briefed them. The Emergency Support Team learned that Solon's parents had given permission to enter their home to arrest their son. Solon's parents advised the officers of the possibility that Solon was carrying a .357 Magnum in the waistband of his pants. They also indicated that Solon had threatened to harm the police if they came on the property. Through surveillance, the officers learned that Solon was outside wielding a six-inch assault knife.
 
 
 5
 The Emergency Support Team gathered at a nearby residence to develop a tactical plan to arrest Solon outside of his home. An outdoor arrest would bar Solon's access to the guns and ammunition stored in his home. The SWAT team members planned to surprise Solon by displaying an abundance of force with the intention of convincing Solon to drop his weapon and submit to the arrest peacefully. Lt. Hogan, the supervising officer, cautioned the officers that Solon may respond irrationally. The officers, therefore, prepared to defend themselves if necessary. The plan, however, called for the officers to arrest Solon without the use of force.
 
 
 6
 At approximately 9:30 a.m., the officers surprised Solon outside his home. They identified themselves as police officers. Solon assumed an aggressive, crouched stance and ignored the officers' orders to drop the knife. Brandishing the knife, Solon advanced on one officer while other officers attempted to divert Solon's attention from the officer he was approaching. At all times, he was threatening the officers with the knife in a slashing motion.
 
 
 7
 Solon brought the knife within inches of Lt. Hogan's face, but Lt. Hogan protected himself by ducking to safety. Solon then advanced on Trooper Ellsworth who stood between Solon and the front porch. As he backed up, Trooper Ellsworth slipped on the snow and fell on his right knee. Solon moved quickly towards Trooper Ellsworth and raised his knife in a threatening manner. As Solon began to bring the knife down, Trooper Ellsworth shot him in the abdomen. Solon hesitated and then began to bring his knife down again. At that instant, Trooper Breedvelt, who was standing on Trooper Ellsworth's left, discharged his shotgun, striking Solon in the right shoulder. Solon fell backwards into the snow.
 
 
 8
 On January 12, 1989, Solon filed suit against Trooper Ellsworth, Trooper Breedvelt and Lt. Hogan alleging that they deprived him of his civil rights, in violation of 42 U.S.C. 1983. Defendants moved for summary judgment on September 15, 1989. The district court subsequently granted defendants' motion on October 31, 1989. On November 16, 1989, Solon filed a timely notice of appeal.
 
 II.
 A.
 
 9
 Appellate review of a grant of summary judgment is de novo. Pinney Dock & Transport Corp. v. Penn Cent. Corp., 838 F.2d 1445, 1472, cert. denied, 488 U.S. 880 (1988). A grant of summary judgment should be affirmed if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986) (on review, a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"); Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988). On a motion for summary judgment, the evidence and all inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party. Blakeman v. Mead Containers, 779 F.2d 1146, 1150 (6th Cir.1985).
 
 B.
 
 10
 Solon assigns error to the district court's grant of summary judgment in favor of defendants. Solon argues that the issue of what constitutes reasonable force under the circumstances is a question of fact which should be resolved by the jury. In addition, Solon maintains that defendants were not entitled to qualified immunity because their use of force was unreasonable under the circumstances. Defendants counter that the district court properly granted summary judgment as the undisputed facts support a finding that their use of force was reasonable, and they are entitled to qualified immunity. Finding defendants' arguments persuasive, we conclude that the district court's grant of summary judgment was proper.
 
 
 11
 The Supreme Court has determined that "apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment. Tennessee v. Garner, 471 U.S. 1, 7 (1985). In Garner, the Supreme Court held that the use of deadly force in effecting an arrest is unconstitutional unless it is necessary to prevent escape and the officer "has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officers or others." Id. at 3, 11. The use of deadly force in the context of self-defense is constitutionally permissible, if an officer establishes that his or her belief that the plaintiff intended to cause imminent death or great bodily harm is one in which a reasonable person of average prudence would have entertained under similar circumstances. See Davis v. Freels, 583 F.2d 337 (7th Cir.1978) (a reasonable belief in the existence of such danger is sufficient even where it is mistaken); see also People v. Doss, 406 Mich. 90, 102, 276 N.W.2d 9 (1979). For police officers, the right to use deadly force extends to the protection of third persons. See Ealey v. City of Detroit, 144 Mich.App. 324, 375 N.W.2d 435 (Mich.Ct.App.1985), cert. denied, 479 U.S. 931 (1986). In determining whether defendants' acted reasonably, we will consider only those facts and circumstances known to the officers at the time they acted.
 
 
 12
 We must conduct a similar inquiry in determining whether the district court properly determined that defendants were entitled to qualified immunity. An arresting officer's entitlement to qualified immunity in a 1983 action is a question of law to be determined by the trial judge prior to the trial. See Arrington v. McDonald, 808 F.2d 466, 467 (6th Cir.1986). "[G]overnmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In Davis v. Scherer, 468 U.S. 183 (1984), the Supreme Court noted that "[w]hether an official may prevail in his [or her] qualified immunity defense depends on the 'objective reasonableness of [his or her] conduct as measured by reference to clearly established law.' " Id. at 191 (citation omitted). In this case, defendants' qualified immunity defense is founded upon the existence of reasonable grounds for their belief formed at the time, in light of all the circumstances and clearly established law, that the use of deadly force was lawful under the circumstances. See Washington v. Starke, 855 F.2d 346, 348 (6th Cir.1988). While carrying out their duties, officers may sometimes be required to use deadly force. Liability under 1983 will not arise if the officers involved reasonably believed that such force was necessary to protect themselves or others from death or great bodily harm. See Maiorana v. MacDonald, 596 F.2d 1072, 1078 (1st Cir.1979).
 
 
 13
 We conclude that the undisputed facts indicate that defendants reasonably believed that Solon intended to cause imminent death or great bodily harm. Defendants' reasonable response to the danger that Solon presented entitles them to qualified immunity. Defendants had been informed of Solon's diminished mental state and his likely armament. A negotiator had failed to persuade Solon to surrender. Brandishing a knife, Solon advanced on several officers who were attempting to effect the arrest. Solon's threatening behavior is a proper predicate for defendants' reasonable belief that Solon intended to cause death or great bodily harm. Defendants' response to the threat Solon presented was likewise reasonable. As Solon alternately approached one officer in a menacing manner, the other officers attempted to divert his attention away from the vulnerable officer. Various officers tried to convince him to drop the knife. Trooper Ellsworth fired only after Solon lunged at him with the survival knife. When Solon persisted in threatening Trooper Ellsworth with the knife, Trooper Breedvelt discharged his shotgun. As these facts are undisputed, we find the district court correctly determined that the officers actions were reasonable. We further hold that the evidence is so one-sided that as a matter of law defendants must be found to have acted reasonably. Accordingly, the district court's order granting summary judgment in favor of defendants was proper.
 
 II.
 
 14
 For the foregoing reasons, we AFFIRM the judgment of the Honorable Anna Diggs Taylor, United States District Judge for the Eastern District of Michigan.
 
 
 
 [1]
 Prior to this incident, Solon had been institutionalized in a private clinic in Florida for three days after he had been discovered in a nightclub banging his head on a table. Solon reported hearing voices. His condition is now being treated with medication